WASHINGTON AND GEORGETOWN RAILROAD COMPANY v. HARMON'S ADMINISTRATOR.

ERROR TO THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

No. 116. Argued January 18, 19, 1893. — Decided March 6, 1893.

In an action against a common carrier to recover damages for personal injuries, if the facts relating to contributory negligence are disputed, that question should be submitted to the jury; and, if the jury find for the plaintiff, the court is not required, in the exercise of judicial discretion, to set the verdict aside.

A railway company being bound to deliver a passenger, its failure to stop long enough to enable him to alight with safety is a neglect of duty which involves liability for injuries resulting therefrom.

When the evidence justifies a finding that future damages will result from an accident to a passenger caused by the negligence of a common carrier, the jury may estimate and include such damages in their verdict.

In the District of Columbia a judgment in an action of tort does not bear interest.

In this case the only error being in an allowance of interest, the court orders the judgment to be affirmed if the interest be remitted; otherwise to be reversed for that error.

THIS was an action brought by John H. Harmon to recover damages for a personal injury to him through the negligence of the railroad company. The Supreme Court of the District in special term rendered judgment on the verdict of the jury, on December 1, 1887, for $6500, and this judgment was affirmed by the court in general term on June 12, 1889, and judgment rendered against the railroad company and its

surety on appeal for the amount of the judgment of the court in special term, with interest thereon from December 1, 1887, when it was entered below, until paid, with costs. To review this judgment this writ of error was brought. The case is reported in 18 Dist. Col. 255.

The evidence is comprehensively given by James, J., delivering the opinion, as follows :

" The plaintiff testified, in his own behalf, that on the evening of the 28th of April, 1882, at about nine o'clock, he took passage in one of the defendant's cars on Pennsylvania Avenue to go to his home on 19th street; that he took his seat about two-thirds of the distance from the rear platform; that at or near 19th street he signalled to the conductor to let him off; that the conductor was then inside the car figuring up his accounts under the light; that, upon receiving the signal, the conductor rang the bell and the car began to slow up, and, as he supposed, was about stopping; that there were not many passengers inside, but the platform was crowded; that he made his way through the crowd on the platform and down on to the step which was occupied by a man and a boy, who held on to the railings on each end of the steps; that the car was, at that time, almost at a standstill; that he could neither swing off nor get back; that just as he had gotten on the step the bell was rung and the car started, and he was thereby thrown off on to the pavement and injured. He further stated that the conductor did not go out to the platform to assist him to get off. On cross-examination he said that, at the time of his attempting to get off, there were only six or eight passengers inside of the car, while the platform was so crowded that the man and boy referred to had to stand upon the step.

" On the part of the defendant the conductor testified that the plaintiff was in the habit of riding on defendant's cars and of getting off while the car was in motion; that when the plaintiff signalled on the night in question he, the conductor, rang the bell and the car began to slow; that he was then standing on the rear platform; that he and a small boy were the only persons then on the platform; that the plaintiff

'without waiting for the car to stop, after so signalling the conductor, immediately went out on the rear platform and stepped down upon the step, at the same time holding on to the iron railing on the car, and while the car was still in motion and moving at a slow rate of speed, nearly at a standstill, the plaintiff stepped off, and after he had let go of the car he, the conductor, pulled the bell to go on again, and as the plaintiff turned he fell; . . . that he did not ring the bell for the car to start until after the plaintiff had stepped on the street and let go of the car.' "

Upon the trial, the court gave the following instructions requested on behalf of the plaintiff:

" If the jury believe from the evidence that the conductor, at the request of the plaintiff, rang the bell to stop the car for him to get off, and that the car thereupon slowed, and that while plaintiff was waiting for the car to stop, and before it had fully stopped, the car started suddenly forward through the negligent act of the conductor or driver, and that the plaintiff was thereby and without any negligence on his part thrown from the car and injured, then he is entitled to recover."

" If the jury believe from the evidence that the conductor, at the request of the plaintiff, rang the bell to stop the car for plaintiff to get off, and that thereupon the car slowed and the plaintiff went out on the platform and, while the car was moving very slowly, stepped down on the step of the car to be in readiness to step off when the car should fully stop, and that instead of stopping fully the car moved suddenly forward in consequence of the negligent act of the conductor or driver and he was thereby thrown off and injured, it would be for the jury to say, under all the facts and circumstances of the case, shown in evidence, whether the conduct of the plaintiff caused or contributed to his injury; and if they further believe that the plaintiff did under the circumstances what an ordinarily prudent man would have done, then he was not guilty of contributory negligence and would be entitled to recover."

" If the jury find for the plaintiff they will find for him such an amount of damages as will fully compensate him for the

suffering of mind and body inflicted upon him by his injury, for the personal inconvenience, the loss of time, and the expenses of cure that naturally and proximately resulted from the injury he suffered; and if they find that the injuries sustained by the plaintiff are permanent they will also find for him such damages as will fully compensate him for the suffering of mind and body, the personal inconvenience, and the loss of time that he will suffer in the future. In determining this as to the future they will consider plaintiff's bodily vigor and age as shown by the evidence adduced."

The defendant prayed the court to instruct the jury as follows:

"The burthen of proof is upon the plaintiff to satisfy the jury that he sustained the injury which is the subject of this action by reason of the negligence of the defendant and without contributory negligence on his part."

But the court refused to give the instruction as prayed, and modified it by striking out the words "and without contributory negligence on his part," and gave it as modified.

Defendant asked the court to give the following instruction:

"If the jury shall find that the platform was crowded, and that the plaintiff made his way through the crowd and got down from the platform and on to the step below and stood on the step without any means of support, with a person on each side and a crowd behind, and whilst the plaintiff was so standing a sudden movement of the car caused the plaintiff to fall from the step on to the pavement, whereby he received the injury alleged, then it will be for the jury to determine from the evidence whether or not the plaintiff is chargeable with contributory negligence through such acts; and if the jury shall find that he is so chargeable, then the plaintiff is not entitled to the verdict."

But the court refused to give the same without modification, and modified it by inserting after the word "chargeable," in the last line of the instruction, the following: "And that such negligence contributed to the injury."

Defendant also asked the court to give several instructions, which need not be repeated, and which were refused

or modified, and, among others, this, omitting the words in brackets:

" It was not the duty of the conductor of the street car from which the plaintiff was injured to exercise any physical control over the plaintiff in getting off the car, and if the jury shall find from the evidence that when the conductor rang the bell to stop the car and when the plaintiff passed out of the car upon the platform and upon the step the conductor was standing on the inside of the car, and that the platform was crowded with passengers, and that a boy was on the step next to the car and a man was also on the other end of the step in such a position as to prevent the plaintiff from supporting himself by either of the railings at the time the plaintiff stepped down upon the step, and that the car was in motion, and that while so on the step the plaintiff was thrown off the car by a sudden jerk or start of the car, caused by the ringing of the bell or otherwise, then it will be for the jury to determine whether or not the plaintiff is chargeable with contributory negligence [by such acts,] and if the jury shall find that he is so chargeable [and that said negligence contributed to the accident,] the verdict must be for the defendant."

But the court refused to give this instruction without modification, and modified it by the insertion of the words given above in brackets.

At defendant's request the court gave the following instructions:

" First. If from the evidence the jury shall find that the injury would not have occurred if the plaintiff had waited until the car stopped, and that the injury was caused by the plaintiff attempting to get off the car whilst in motion, then the plaintiff contributed to the injury, and is not entitled to recover.

"Second. If the jury shall be satisfied from the evidence that the plaintiff himself so far contributed to the accident by his own negligence or want of ordinary care and caution that but for such negligence or want of ordinary care and caution on his part the accident would not have happened, the plaintiff cannot recover, and the verdict must be for the defendant."

The court also charged the jury as follows:

" This case suggests four theories as to the cause of this accident which is complained of under the declaration and as many propositions of law applicable to them. How far there is sufficient evidence in the case or any evidence to support any one of these theories I shall leave to you. In the first place, the testimony on the part of the defendant is to the effect that the plaintiff had descended from the car (in safety) and that he stepped and fell from some cause not attributable to the conduct of the defendant, but from some unforeseen accident. If you find that to be the case it is perfectly apparent that there is no ground of action at all. There is evidence in the case directly to that effect which is to be construed by you and weighed in connection with all the other evidence before you. If the plaintiff undertook, after requesting the conductor to stop the car, to descend from the car while it was still in motion, however slowly it might be going, that is an act involving necessarily some imprudence, so I take it, and if that act was the cause of his falling it would amount, in my judgment, to contributory negligence and would defeat his action. If you are satisfied that it was an act of carelessness on his part to come out on the crowded platform and step down on the step while it was already occupied by other people, so that he had to stand between them and had no means of supporting himself, and in consequence of that alone he fell from the car without any other cause — I say if you are satisfied that that was an act of carelessness on his part, and that it was the direct cause of his falling off the car, that would also amount to contributory negligence, which would defeat his right to recover. Fourthly, if you are satisfied that while he was upon the step, even though it might have been imprudent in him to go there, and yet if the conductor had allowed the car to stop he would have alighted in safety and no accident would have happened, but that instead of so doing the conductor either negligently failed to observe whether or not he had alighted, or, seeing him there, neglected to wait until he had alighted, and gave the signal to go on, and in consequence of that a sudden jerk of

the car took place, and that threw him down and was the immediate cause of his falling, and that the accident would not have happened but for that fact, then I hold that the company is responsible."

Exceptions were duly taken by the defendant.

*Mr. Walter D. Davidge* and *Mr. Enoch Totten* for plaintiffs in error.

It was error to leave the question of contributory negligence to the jury. Whether there has been contributory negligence on the part of the plaintiff is a question for the jury under the same circumstances and subject to the same limitations as the question whether there has been negligence on the part of the defendant. The rule, briefly, is that where the facts are undisputed and where but one reasonable inference can be drawn from them the question is one of law for the court; but where the facts are left by the evidence in dispute, or where fair minds might draw different conclusions from them, it must go to the jury to resolve the dispute in the one case or to draw the inferences in the other. *Randall* v. *Baltimore & Ohio Railroad*, 109 U. S. 478; *Railroad Co.* v. *Jones*, 95 U. S. 439; *District of Columbia* v. *McElligott*, 117 U. S. 621; *State* v. *Baltimore & Ohio Railroad*, 73 Maryland, 374.

While it is the duty of a street railroad company to provide safe and convenient means of entering and leaving its cars, there is a corresponding obligation on the part of the passenger to exercise ordinary care and prudence, and if in this respect he is negligent, and his negligence contributes to the injury of which he complains, he cannot recover.

The rule to be applied is ordinary care and caution — that degree of care which men of ordinary prudence would exercise under the circumstances — and the judge, in a case like the present, is quite as capable of applying that rule to plain and undisputed facts as a jury is.

While to ride upon the platform, or even upon the step with the support of the railing, may not be negligence in all cases, and much less negligence in law, it is submitted that to volun-

tarily ride upon the step of a moving car without any means of support is, in the absence of justification or excuse, necessarily negligence, according to any reasonable standard of care and prudence. *Wills* v. *Lynn & Boston Railroad*, 129 Mass. 351; *Jones* v. *Railroad Co., supra.*

It cannot be doubted that a passenger voluntarily occupying an unsafe position in a car, and injured by reason of such position, is barred by contributory negligence from a recovery. In such a case the want of ordinary care is plainly a proximate cause of the injury. If the injury would have happened irrespective of the unsafe position, then such position would not be a proximate cause.

We concede that the burden of proof as to contributory negligence is, as a rule, upon the defendant. *Railroad Co.* v. *Gladmon*, 15 Wall. 401; *Indianapolis & St. Louis Railroad* v. *Horst*, 93 U. S. 291; *Inland & Seaboard Coasting Co.* v. *Tolson*, 139 U. S. 531. The question is whether the rule is applicable to the present case.

The evidence was closed. The right to recover depended exclusively upon the evidence of the plaintiff, and his relation to the case was double — that of party and sole witness. He could enlighten the court and jury by evidence in the ordinary sense of that term, and he could also bind himself by solemn admissions made under oath in a judicial proceeding. He testified fully as to the facts, including his own conduct, and a recovery could be claimed only upon his evidence. It is submitted that in such a case the ordinary presumption of law in favor of care and prudence on the part of the plaintiff has no place.

We do not dispute that a plaintiff may recover damages for an injury caused by the defendant's negligence, notwithstanding the plaintiff's own negligence exposed him to the risk of the injury, if such injury was proximately caused by the defendant's omission, after becoming aware of the plaintiff's danger, to use ordinary care and diligence for the purpose of avoiding injury to him. But this exception does not abrogate the general rule as to contributory negligence; and it is apparent that if the elements of time and opportunity do

not clearly exist, the application of the exception is simply to destroy the general rule and to substitute for it the rule of *comparative* negligence.

In Maryland there are two cases which very clearly draw the line between where the exception is and is not applicable. The first is *Northern Central Railway* v. *Price*, 29 Maryland, 420, where a person negligently walking on a railroad track was killed, and there was time and opportunity for the defendant to avoid the injury. The second is *Northern Central Railway* v. *Geis*, 31 Maryland, 357, where, under circumstances very similar to those of the present case, it was contended that the exception was applicable, as the negligence of the plaintiff was remote and that of the defendant proximate. Judge Alvey, delivering the opinion of the court in the latter case, draws the distinction between the two cases. He says: "It must appear that the defendant might by a proper degree of caution have avoided the consequences of the injured party's neglect. . . . This, however, implies *time* for the one party to become aware of the conduct and situation of the other, for neither could be required to anticipate the other's negligence. But where there is a concurrence of negligence of both in the production of injury to one of the parties, the causes are commingled and are regarded as equally proximate to the effect produced, and therefore not susceptible of apportionment. And if it be true that the deceased was guilty of negligence, it must, from the nature of the accident, have been of this latter character" (p. 366).

This case was followed by *Lewis* v. *Baltimore & Ohio Railroad*, 38 Maryland, 588, 598, 599, 600, 601; *Kean* v. *Baltimore & Ohio Railroad*, 61 Maryland, 154, 167, 168; and *Maryland Central Railroad* v. *Neubeur*, 62 Maryland, 391, 401, 402, in which the doctrine as laid down by Judge Alvey was discussed and affirmed.

*Mr. W. A. Cook* and *Mr. W. L. Cole*, (with whom was *Mr. C. C. Cole* on the brief,) for defendant in error.

*Mr. Luther H. Pike* and *Mr. A. St. C. Denver* also filed a brief for defendant in error.

MR. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

It is contended that it was error to leave the question of contributory negligence to the jury. We do not think so. This was not a case where the facts were undisputed, and where but one reasonable inference could be drawn from them. The court was not obliged, in the exercise of a sound judicial discretion, to set aside the verdict because the evidence of contributory negligence was of such conclusive character that it could not be sustained. *Railroad Co.* v. *Converse,* 139 U. S. 469.

It was the duty of the defendant to safely carry and deliver the passenger, and in so doing not only to provide safe and convenient means of entering and leaving the cars, but to stop when the passenger was about to alight, and not to start the car until he had alighted. There was a conflict of evidence as to the condition of the platform, the position of the plaintiff, and the circumstances surrounding the accident. It is conceded that to be upon the platform, or even upon the step, might not be negligence in all cases, and certainly not negligence in law, but it is insisted that the plaintiff was voluntarily riding upon the step of the car, when moving, without any means of support, and that this, in the absence of justification or excuse, would necessarily be negligence. The difficulty is that this position assumes a condition of affairs which is controverted upon the case made.

It is further argued, that, while the general rule is that the burden of proof as to contributory negligence is upon the defendant, that rule was not applicable, because the presumption that the plaintiff was not in fault was overcome by plaintiff's own evidence, and therefore that the court should have instructed the jury that the burden of proof was not only upon the plaintiff to satisfy the jury that he sustained the injury by reason of the negligence of the defendant, but also that this was without contributory negligence on his part. Testing this contention by the evidence of the plaintiff alone, without admitting that this should be done where the defend-

ant has gone into evidence and the ruling he asks must be given in view of all the testimony, the precise question was decided in *Indianapolis & St. Louis Railroad* v. *Horst*, 93 U. S. 291, 298, adversely to defendant's position. In that case the defendant adduced no evidence, and it was contended that plaintiff's evidence showed that the accident resulted from his negligence, and that, therefore, the trial court erred in charging that " The burden of proving contributory negligence rests on the defendant; and it will not avail the defendant unless it has been established by a preponderance of evidence." This court held the instruction correct, and said: . " The court did not say that if such negligence were established by the plaintiff's evidence, the defendant could have no benefit from it, nor that the fact could only be made effectual by a preponderance of evidence, coming exclusively from the party on whom rested the burden of proof. It is not improbable that the charge was so given by the court from an apprehension that the jury might, without it, be misled to believe that it was incumbent on the plaintiff to show affirmatively the absence of such negligence on his part, and that if there was no proof, or insufficient proof, on the subject, there was a fatal defect in his case. It was, therefore, eminently proper to say upon whom the burden of proof rested; and this was done without in anywise neutralizing the effect of the testimony the plaintiff had given, if there were any, bearing on the point adversely to him."

The defendant did not attempt to have the case taken away from the jury at the conclusion of plaintiff's evidence, and if it had, we do not think a motion to that effect could have been sustained. As a mere matter of law, the burden as to contributory negligence remained the same under the circumstances, and it would have been error if the court had given the instruction as requested.

It is urged with particular earnestness that the fourth branch of the charge was objectionable in stating that even though plaintiff was negligent in being upon the step before the car had stopped, yet if they were satisfied that the accident would not have happened if the conductor had allowed

the car to stop, but that instead of so doing the conductor either negligently failed to observe whether he had alighted or not, or, seeing him there, neglected to wait until he had alighted and gave the signal to go on, and in consequence of that a sudden jerk of the car took place which threw him down and was the immediate cause of the injury, and that the accident would not have happened but for that fact, then the plaintiff could recover. The argument is, that the rule applied in the instruction is that which obtains where the plaintiff's negligence exposes him to the risk of injury, and the defendant omits, after becoming aware of plaintiff's danger, to use ordinary care and diligence to avert the consequences; and it is said that whether a defendant is negligent or not, in failing to adapt his conduct to a condition of things caused by the negligence of the plaintiff, depends upon whether the defendant had time and opportunity to ascertain and avoid the injury. *Northern Central Railway* v. *Price*, 29 Maryland, 420, and *Northern Central Railway* v. *Geis*, 31 Maryland, 357, with other like cases, are cited to the point that the exception to the general rule as to contributory negligence is not otherwise applicable. The language of Judge Alvey, in the latter case, is quoted as follows: "It must appear, either that the defendant might, by a proper degree of caution, have avoided the consequences of the injured party's neglect, or that the latter could not, by ordinary care, have avoided the consequences of the defendant's negligence. This, however, implies time for the one party to become aware of the conduct and situation of the other, for neither could be required to anticipate the other's negligence. But where there is a concurrence of negligence of both in the production of injury to one of the parties, the causes are commingled, and are regarded as equally proximate to the effect produced, and, therefore, not susceptible of apportionment." But, as explained by Judge James in the opinion in this case, the omission to which the instruction refers was not the omission to observe that a person had placed himself in danger of being hurt by the defendant, whereby the latter was called upon to exercise care to avert that consequence, but it was the omission to

observe whether the passenger whom the defendant was setting down had actually alighted. The duty resting upon the defendant was to deliver its passenger, and that involved the duty of observing whether he had actually alighted before the car was started again. If the conductor failed to attend to that duty, and did not give the passenger time enough to get off before the car started, it was necessarily this neglect of duty that did the mischief. It was not a duty due to a person solely because he was in danger of being hurt, but a duty owed to a person whom the defendant had undertaken to deliver, and who was entitled to be delivered safely by being allowed to alight without danger. Viewed in this light, the instruction was unobjectionable. If the conductor negligently failed to observe whether plaintiff had alighted, or knowing that he had not, negligently started the car too soon, and in consequence of that, a sudden jerk of the car took place and threw him down and was the immediate cause of his falling, and the accident would not have happened but for that fact, we think it clear that such negligence as might be imputed to the plaintiff in being upon the step at all, could not, under the circumstances supposed, be properly held to have been contributory negligence. To hold so would be to determine that a carrier could defend his own negligence in the particulars named upon the ground that if the plaintiff had not been there he would not have been hurt. It may be said that he placed himself where he was in risk of falling off, but that was a risk he could not have anticipated as the result of a sudden start before he had got off, because he had a right to assume that the car would actually stop to allow him to get off, and if it had, as it should have done, upon the hypothesis of the instruction, no accident would have happened. Under the terms of the instruction the injury ensued directly from the defendant's negligence, and that was its proximate cause. *Inland and Seaboard Coasting Co.* v. *Tolson*, 139 U. S. 551, 558.

The learned judge who tried the case, in explaining its various aspects, stated that it suggested four theories as to the cause of the accident, and whether there was sufficient or any

evidence to support any one of these theories, he should leave to the jury. He meant, of course, that the jury should consider the case from all the points of view presented, and exclude such of the contentions as were unsupported by the evidence. We see no ground upon which the defendant can complain of this. We cannot find upon exploring the evidence, all of which is given in the record, that it reasonably tended to show that the plaintiff was injured in getting off the car while it was in motion. The plaintiff denied it, and the conductor said that it was safe for the plaintiff to get off, and that he got off. Yet the court permitted the jury to pass upon the case as if the proofs raised an actual controversy upon the point. Perhaps such an inference might have been drawn, as plaintiff's claim was that he was about to get off, but, taking the opening passage of the charge in connection with what followed, we think that the defendant cannot complain that it was improperly deprived of the judgment of the court, and that thereby the door was open to mere conjecture on the part of the jury, to its injury.

Another error assigned is that the instruction in relation to damages was objectionable in permitting an award for the future effects of the injury; but there was evidence which justified a finding that future damages would inevitably and necessarily result, and this being so there was no error in the instruction upon that subject.

It appears to us that this case was carefully tried and properly left to the jury, and that no error warranting the reversal of the judgment was committed.

It is further urged that the court in general term erred in rendering a judgment for interest against the defendant and its surety, notwithstanding the judgment of the special term bore no interest. The question is whether by the law of the District of Columbia a judgment in an action of tort carries interest. In *McDade* v. *Washington & Georgetown Railroad*, 5 Mackey, 144, this subject was considered by the Supreme Court of the District, and the court concluded that such judgments did bear interest, Hagner, J., delivering an elaborate opinion to that effect. It is conceded that at common

law, judgments, whatever the cause of action, did not bear interest. *Perkins* v. *Fourniquet*, 14 How. 328. This was so in Maryland at the time of the cession of the District, with perhaps some exceptions, not embracing judgments in actions of tort. *Hammond* v. *Hammond*, 2 Bland, 306, 370; *Railway Co.* v. *Sewell*, 37 Maryland, 443. To change the common law in the District after the cession, of course required an act of Congress.

By the act of June 24, 1812, (2 Stat. 756, c. 106, § 6; Rev. Stat. Dist. Col., § 829,) it was provided as follows: "Upon all judgments rendered on the common law side of the Circuit Court of said District in actions founded on contracts, interest at the rate of six per centum per annum shall be awarded on the principal sum due until the judgment shall be satisfied, and the amount which is to bear interest and the time from which it is to be paid shall be ascertained by the verdict of the jury sworn in the cause."

By its terms this provision was confined exclusively to actions founded on contracts. As appears from *Newson* v. *Douglass*, 7 Harr. & Johns. 417; *Karthaus* v. *Owings*, 2 G. & J. 430; *City Railway Co.* v. *Sewell*, 37 Maryland, 443, and many other cases, only some causes of action carried interest at common law, in Maryland, as matter of right, its allowance otherwise being left to the jury to be decided according to the equities of the transaction, and, with few exceptions in cases of contract, no judgment in any form carried interest. This law applied the remedy, but it declared that, while interest was to be allowed on the principal sum due, the amount which was to bear interest and time from which the interest was to run should be ascertained by the verdict of the jury. Interest was not to be awarded upon a judgment for the aggregate of principal and interest, but interest was recoverable upon the principal sum due from the date ascertained as directed.

The 8th section of the act of August 23, 1842, (5 Stat. 516; 518, c. 188,) provided "That on all judgments in civil cases, hereafter recovered in the Circuit or District Courts of the United States, interest shall be allowed, and may be levied by

the marshal, under process of execution issued thereon, in all cases where, by the law of the State in which such Circuit or District Courts shall be held, interest may be levied under process of execution on judgments recovered in the courts of such State, to be calculated from the date of the judgment, and at such rate per annum, as is allowed by law, on judgments recovered in the courts of such State." This was carried forward into section 966 of the Revised Statutes. The purpose of this act was to bring about uniformity between the tribunals of the United States and of the States upon the subject of interest, and the Supreme Court of the District of Columbia is neither within its terms nor its object. It is wholly inapplicable. Whatever the law of the District of Columbia is, upon the subject of interest, controls of course.

On the 22d of April, 1870, an act was approved, entitled "An act to amend the usury laws of the District of Columbia," the first section of which read: "That the rate of interest upon judgments or decrees, and upon the loan or forbearance of any money, goods, or things in action, shall continue to be six dollars upon one hundred dollars, for one year, and after that rate for a greater or less sum, or for a longer or shorter time, except as hereinafter provided." The second section made it lawful, in all contracts thereafter to be made, for the parties to agree in writing for ten per centum per annum, or any less sum, of interest on money loaned or in any manner due and owing. The other sections related to the penalty for contracting to receive a greater rate; the recovery back of unlawful interest so received; and to the effect of the law upon the national banking act. 16 Stat. 91, c. 59. These sections constitute §§ 713, 714, 715, 716, and 717 of the Revised Statutes of the District.

This act related, as its title correctly stated, to the usury laws of the District, and the rate of interest at six per cent was to continue except as provided by the subsequent section, penalty being denounced for contracting in writing for a greater rate than ten or verbally for a greater rate than six per cent. Judgments and decrees, as well as the loan or forbearance of money, goods, or things in action, are referred to,

but the act does not say that they shall bear interest in the future if they did not in the past. On the contrary, that which had been was to continue, and the changes wrought by the statute were only in the rate and the consequences of transgression. There is nothing to indicate a legislative intention to declare that all judgments and decrees should thereafterwards bear interest by virtue of the statute, or to make any change in that respect. Such a view disregards the language of the act, which confines the exception to existing law to the enumeration of the succeeding sections. Judgments bore interest in actions founded on contracts as provided by the act of 1812, the award of interest being based upon the verdict and to be collected on the principal sum. Judgments in tort did not bear interest. The rule could, indeed, be altered or repealed by Congress, but the statute to that effect should be plain and unambiguous, or the repugnancy between the old law and the new, incapable of being reasonably overcome. We are unable to conclude that this act of 1870 comes within the settled rules of construction in this regard.

By section 997 of the Revised Statutes of the District, justices of the peace have jurisdiction where the amount claimed for debt or damages arising out of contracts or damages for injuries to persons or property does not exceed one hundred dollars, and by section 1007, justices' judgments bear interest from their date until paid or satisfied; but it does not follow that, because Congress intended to allow interest upon judgments in tort not exceeding one hundred dollars, therefore all judgments in tort bear interest.

Reference was made at the bar to certain rules of the Supreme Court of the District which are and have been, since 1869, as follows:

"51. A general verdict for the plaintiff shall be recorded thus: 'The jury, on their oath, say they find the issue aforesaid in favor of the plaintiff, and that the money payable to him by the defendant by reason of the premises, is the sum of $———, besides costs.' If the action be founded on contract, the record of the verdict shall proceed: 'With lawful interest from the — day of ———, 18—, besides costs.'

"If the verdict be for the defendant, then: 'The jury, on their oath, say they find for the defendant,' unless, upon set-off pleaded, a balance is found due the defendant; and then the record of the verdict shall proceed: 'And that the money payable to him by the plaintiff, by reason of the premises, is the sum of $——, with interest from the — day of ——, 18—, besides costs.'.

"If there be several counts in the declaration, and the jury find for the plaintiff on some and for the defendant on the rest, the verdict shall be entered thus: 'The jury, on their oath say, they find for the plaintiff on the (—) issues, and that the money payable to him by the defendant, by reason thereof, is the sum of $——, [with interest from the — day of ——, 18—,] besides costs; and for the defendant on the (—) issues.' "

"67. Whatever the cause of action may be, if the judgment be for the recovery of money, it shall be awarded generally without any distinction of debt from damages — thus: 'It is considered that the plaintiff recover against the defendant $——, [with interest as aforesaid,] being the money payable by him to the plaintiff by reason of the premises, and $—— for his costs of suit, and that he have execution thereof.' "

These rules are in conformity with the act of 1812. The jury find the principal sum and the time from which interest on the contract shall be given. In an action of tort the jury include interest, if given at all, in the damages assessed. The form of the judgment prescribed follows the verdict, discriminates between contract and tort, and recognizes that the judgments that carry interest do so by reason of the verdict to that effect. We think no support to the view that judgments in tort bear interest by force of law can be derived from these rules.

Nor is the contention sustained by reference to the rules of this court. By the 23d section of the Judiciary Act of 1789, now section 1010 of the Revised Statutes, it was declared: "Where, upon such writ of error the Supreme or a Circuit Court shall affirm a judgment or decree, they shall adjudge or decree to the respondent in error just damages for his delay,

and single or double costs at their discretion." And by various rules of this court, promulgated from time to time, this jurisdiction has been regulated. Thus, in cases of affirmance, where the writ is for mere delay, ten per cent damages may be awarded in addition to interest, and interest is given at the same rate that similar judgments bear interest in the courts of the State where the judgment was rendered; and the same rule is applied to decrees for the payment of money, unless otherwise ordered by this court. (Rule 23.) But the question of interest is solely for the court to determine, as the act of 1842 did not repeal the 23d section of the Judiciary Act. *Boyce* v. *Grundy,* 9 Pet. 275; *Mitchell* v. *Harmony,* 13 How. 115, 149; *Perkins* v. *Fourniquet,* 14 How. 328, 331; *In re Washington & Georgetown Railroad,* 140 U. S. 91.

We are of opinion that error was committed in the judgment of affirmance in respect of the allowance of interest.

In *Keller* v. *Ashford,* 133 U. S. 610, which was a case of contract, the matter in dispute in the District Supreme Court in general term was, with interest accrued before the affirmance, largely in excess of the amount necessary to give jurisdiction to this court. A motion was made to dismiss, which was overruled, and Mr. Justice Gray, delivering the opinion of the court, pointed out that the promissory note sued on, by its express terms, bore interest at the rate of eight per cent yearly from its date until paid, and that, computing interest accordingly, the sum in dispute was much more than the jurisdictional amount, and as to *Railroad Co.* v. *Trook,* 100 U. S. 112, and *District of Columbia* v. *Gannon,* 130 U. S. 227, (which involved judgments rendered in cases in tort,) cited in support of the motion, he remarked that the judgment in special term for damages for an action sounding in tort " bore no interest, either by the general law, or by the judgment of affirmance in general term." In each of the cases referred to, the judgment of affirmance was only for the amount which the sum or value of the matter in dispute had to exceed in order to give us jurisdiction. Had the original judgments carried interest by force of law, jurisdiction would have attached. *Mass. Benefit Association* v. *Miles,* 137 U. S. 689.

But as the question was not fully discussed, we have thought it proper to reconsider it in the light afforded by the opinion of the Supreme Court of the District in McDade's case.

While, however, we are of opinion that there was error in this particular in the judgment of affirmance, we are not constrained to reverse it, if the interest be remitted. *Bank of Kentucky* v. *Ashley*, 2 Pet. 327; *Phillips & Colby Construction Co.* v. *Seymour*, 91 U. S. 646, 656; *Kennon* v. *Gilmer*, 131 U. S. 22, 29. In *Bank* v. *Ashley*, the remittitur was filed in this court. In *Construction Co.* v. *Seymour*, the remittitur was filed in the court below and a certified copy thereof filed here. If the defendant in error shall within a reasonable time during the present term of this court produce and file a certified copy of a remittitur of the interest in the Supreme Court of the District, the judgment, less the interest, will be affirmed; but if this is not done, it will be reversed. In either event the costs must be paid by defendant in error.

*Ordered, that if the defendant in error shall, within a reasonable time during the present term of this court, produce and file a certified copy of a remittitur of the interest in the Supreme Court of the District of Columbia, the judgment, less the interest, will be affirmed; but if this is not done it will be reversed. In either event the costs must be paid by the defendant in error.*

Mr. Justice Brewer did not hear the argument and took no part in the decision.