# THE ANACOSTIA AND POTOMAC RIVER RAIL-ROAD CO.

*v.*

# KLEIN.

PRACTICE; DEPOSITIONS OF NON-RESIDENT WITNESSES; STREET RAILWAYS; NEGLIGENCE.

1. *Quære*, whether by consenting to the issue of a commission to take the deposition of a non-resident witness, and afterwards stipulating that the testimony of the witness should be taken by the commissioner in shorthand and then typewritten, and that he should then in execution of his commission make return of the typewritten evidence, a party does not waive all defects of form and become bound to admit the deposition in evidence.

2. *Quære*, whether ch. 7, sec. 7 of the Maryland act of 1773, relating to the taking of depositions of non-resident witnesses, is in force in this District.

3. The deposition of a non-resident witness living within 100 miles of this District and not shown to be aged, sick or infirm, could prior to March 19, 1894, the date the new rules of the Supreme Court of the District went into effect, be taken in an action at law by virtue of a commission issued prior to that date under former Equity rule 65, as extended by the order of that court of May 22, 1877.

4. It is the duty of the conductor of a street railway car to stop his car when hailed, and to hold the car and not permit it to start until the person hailing the car has had reasonable time to take a safe position inside; and a failure to perform this duty constitutes negligence.

5. Where a special prayer submitted by the defendant in a personal injury case and founded on the assumption that the injury may have resulted from mere accident, has no special application to the evidence, and as a general proposition is necessarily included in instructions already given, it is properly refused by the trial court.

No. 504.   Submitted January 10, 1896.   Decided February 10, 1896.

HEARING on an appeal by the defendant from a judgment on verdict in an action to recover damages for personal injuries. *Affirmed.*

The COURT in its opinion stated the case as follows:

The appellee, Heineman Klein, as plaintiff below, recovered a judgment against the appellant, the Anacostia and Potomac River Railroad Company, for $3,000 for injuries received while attempting to enter one of its horse cars. Plaintiff was in Washington, representing a Baltimore shoe store, and, wishing to visit a customer in Anacostia, signalled a passing car. It was what is called a "summer car" and was drawn by two horses. Being open at the sides, it had a foot board, running the length of the car, that was about eight or nine inches and situated about fifteen inches above the ground and twelve inches below the car floor.

Upon each upright standard, supporting the roof of the car, there was a long brass rod, to be used as a handle in getting in and out and for support in standing on the footboard, as passengers occasionally did. Plaintiff carried a sample case about two feet long and two feet wide, containing fifteen sample shoes and weighing seven or eight pounds. He testified as follows concerning the manner in which he received his injuries:

"I got on the sideboard or foot-board, on the left-hand side of the car, putting my left foot on the board and taking hold of the handle on the upright, or the upright itself, at the end of the car seat, with my left hand. I had the sample case in my right hand, which I put on the seat, or on the top of the arm at the end of the seat, and while I was in that position the conductor rang the bell, as a signal for the car to start, and the driver started the car up suddenly and I fell off and was dragged by the car, while still holding to the car with my left hand, and my hip was bruised and injured by striking against the ground or pavement. My sample case fell off with me." There was testimony tending show that plaintiff received painful injuries; that he was carried to the Emergency Hospital at once and treated, and that he was long disabled from labor and so forth. The

car was identified by the plaintiff as car No. 51 ; and the
driver and conductor, who were on that car on the day of
the accident, were called as witnesses, by the defendant.
Neither of them remembered plaintiff, or that any injury
had been received by any one that day.   No report of an
accident was made to the general office, though it was their
duty to report when one occurred.   There were no other
witnesses to the accident.   The driver and conductor, both,
said that it was not unusual for persons to stand on the foot-
board, holding on to the handles, while the car was in mo-
tion.   The driver said that he was often told by passengers
to go ahead when they got upon the foot-board and before
they could take their seats, and had often done so.   The
car generally waited for ladies to get in, but would often
start while male passengers were holding on to the handles.

At the request of the plaintiff the court gave the follow-
ing special instruction to the jury, to which exception was
taken :

" If the jury believe from the evidence that the plaintiff
signalled one of the defendant's cars, as testified to, for the
purpose of boarding the same, and that in accordance with
said signal the defendant's car was stopped, as testified to,
and that plaintiff, whilst in the act of getting in said car and
before he had taken a seat but whilst he was on the foot-
board, described in the evidence, the conductor of the said
car rang the bell for the driver to go ahead, in consequence
of which the driver started his horses and the plaintiff was
jostled, and thrown and injured, as testified to, then the court
instructs the jury that there is evidence from which they
may find the defendant's agent was guilty of negligence, and
their verdict must be for the plaintiff, provided they find that
the plaintiff whilst boarding the car was exercising such care
as a reasonably prudent man would have used under similar
circumstances."

The defendant submitted six special prayers for instruc-
tions, five of which were denied.   The one given was to the
effect that the burden of proof was on the plaintiff to satisfy

the jury that the injury, if received, was the fault of the defendant, and also, that plaintiff had been "jostled" off the car. The court gave a general charge to the jury touching the issues of the case, and informing them that the plaintiff, in order to recover, must show that he had been hurt in the manner charged by the sudden and negligent starting of the car; and, further, that the act of starting at the time and under the circumstances, was an act of negligence, and that he himself was not at fault at the same time. The jury were told, also, that, if after the car had come to a stop to give the plaintiff an opportunity to get on, he was attempting to do so with the sample case in his hand, and before he had obtained a safe situation, either by becoming seated or by having entered the car so as not to be in danger of being thrown from it, the conductor gave the signal and started the car, and in consequence thereof plaintiff was thrown to the ground, and plaintiff was not himself negligent, then there would be negligence on the part of the conductor in giving the signal for starting before the plaintiff had time to get to a place of safety, unless there was sufficient time after the bell rang and before the car started, for the plaintiff to have secured himself if he had been careful, thoughtful and prudent.

The jury found for the plaintiff, and motion for new trial having been overruled, the defendant has appealed from the judgment rendered.

*Messrs. Edwards & Barnard* for the appellant.

*Messrs. Mackall & Maedel* for the appellee.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. The first assignment of error raises a question of practice. The bill of exceptions shows that the plaintiff was permitted to read in evidence the depositions of certain witnesses over the objection of the defendant. The witnesses whose depositions had been taken lived in Maryland and

within one hundred miles of the place of holding court. They were not shown to be aged, sick or infirm at the time. The commission to take these depositions was issued February 8, 1894, upon an order duly entered, upon the motion of the plaintiff and the consent of counsel for defendant. On the day they were taken defendant's counsel appeared, and the following agreement was then entered into, and signed by counsel for both parties : " It is agreed between attorneys for the plaintiff and defendant that the testimony of the witnesses in this case may be taken by the notary in shorthand and then typewritten, and that the notary may, in execution of his commission herein, return into court the typewritten evidence to be used in this case."

The argument in support of the objections to the depositions is founded on the theory that they were taken by virtue of, and must be governed as to their admissibility by the terms of the sections of the Revised Statutes relating to the taking of depositions *de bene esse.* Sections 863, 865, 876. Conceding this, it might possibly be held that, by consenting to the issue of the commission and signing the foregoing agreement, the defendant not only waived all matters of form therein, but also became bound to admit the depositions as evidence, under all circumstances. *Harris* v. *Wall,* 7 How. 693. We prefer, however, to find other and broader grounds upon which to sustain the action of the court in overruling the defendant's objections. We find in the first place, that there is a statute of the State of Maryland, in force at the time of the cession of the District, which authorized courts of law, upon the application of a party to a suit, to direct a commission to issue to take the deposition of any witness residing out of the province. Act of 1773, ch. 7, sec. 7 ; Comp. Stat. D. C. 568, sec. 19.

We cannot find where this statute has been expressly repealed and we see no such necessary conflict between it and the provisions of the acts of Congress cited above as would require us to hold that it had been repealed by implication. It is apparently true, however, that it was regarded

at least as obsolete by the courts created for the District, after the cession, and we may pass it by also without resting our decision upon it. The old court was succeeded by the present Supreme Court of the District under an act passed in 1863. That act conferred upon the court the express power to make all rules necessary to regulate the practice therein. R. S. D. C., sec. 770. In the exercise of this power, the following was regularly adopted as a paragraph of Equity Rule 65 :

" Where the testimony of non-resident witnesses is desired by either party, the court in term time, or any justice, may, on motion designating the names of such witnesses, appoint an examiner to take such testimony, to whom the clerk shall thereupon issue a commission under the seal of the court ; and said testimony shall be taken on written interrogatories and cross-interrogatories, which interrogatories shall be filed in the clerk's office at least ten days before the issue of such commission, so that the adverse party may have opportunity to file cross-interrogatories. But the court, or justice, for special cause shown, may direct that such testimony shall be taken orally."

On May 22, 1877, by order duly entered in the minutes of the General Term, the foregoing rule was given general operation and effect at law as well as in equity, and has often been followed in practice. See Mackey's Practice, 122, note 41. The rule, whilst going somewhat further, is not in conflict with the terms of the Maryland statute of 1773, and the power to make and enforce it was clearly conferred upon the Supreme Court of the District by special provision of the act creating that court and defining its powers and jurisdiction.

Although the order giving the above quoted paragraph of Equity Rule 65 operation at law also, does not appear among the rules published as in force at the time the commission to take the depositions was issued, we do not find that it had been repealed, and must, therefore, consider it as controlling the practice at that time. It would seem,

however, that the rule, as it affects the practice at law, has not been in force since March 19, 1894. On that day, the new rules of the court went into effect, and it is not to be found among them. The order adopting the new rules recites that they are " in lieu of the rules heretofore in force," and may therefore be taken as a complete repeal of the old system by the substitution of the new. Whether the omission to include this rule was intentional or inadvertent, is not for us to determine. The repeal does not affect the question here, for though the depositions were taken after the new rules went into effect, they are within the saving clause of the order adopting them, because the commission had issued under the seal of the court some time before.

2. We come now to the consideration of alleged errors committed in giving and refusing instructions to the jury. The whole charge of the court must be considered in the light of its application to the evidence in the case. With the credibility and weight of that evidence, if it make a case that must be submitted to the jury, we have nothing to do. The only witness who testified to the occurrence of the accident and the attendant circumstances thereof, was the plaintiff himself, and the verdict of the jury affirms the truth of his testimony. He said that he signalled the car in order to take passage; that the conductor saw him and caused the car to be brought to a stop that he might enter; that, encumbered by his sample case, he stepped upon the footboard, took hold with his left hand of the handle provided for the purpose, and attempted to enter and take a seat; before entering and before he had reasonable time to do so, the conductor gave the signal to start; the car started suddenly and thereby caused the plaintiff to fall to the ground; that he was guilty of no negligence, and the accident was not contributed to by fault of his. When hailed, it was the duty of the conductor to stop the car for the plaintiff to enter. Having done this it was his duty to hold the car and not permit it to start until plaintiff had, at least, reasonable time to take a safe position inside. A failure to perform

this duty constituted negligence, and the court did not err in so charging the jury. *W. & G. Railroad Co.* v. *Tobriner*, 147 U. S. 571, 580; *Met. Railroad Co.* v. *Jones*, 1 App. D. C. 200, 207; Booth, St. Rwy. Law, sec. 348.

There was no error in refusing the special prayer submitted by the defendant, founded on the assumption that the injury may have resulted from mere accident, because it had no special application to the evidence, and as a general proposition was necessarily included in the instructions given. The jury were not permitted to find for the plaintiff unless they believed that his fall from the car was caused by the actual negligence of the defendant, free from fault on his own part.

A careful examination of the whole charge discloses nothing to justify the objection that, under it, the jury might infer defendant's negligence from the mere fact of injury received by plaintiff as passenger.

We think it unnecessary to discuss the series of special instructions offered by the defendant and refused by the court. In every particular in which they may have presented a rule of law applicable to the facts of the case, they were embraced in the general charge given to the jury.

Finding no error in the record, we must affirm the judgment, with costs to the appellee; *and it is so ordered.*

*Judgment affirmed.*