TEXAS & P. RY. CO. v. NUNN.

(Circuit Court of Appeals, Fifth Circuit. December 19, 1899.)

No. 837.

CARRIERS—INJURY TO PASSENGERS—NEGLIGENT OPERATION OF TRAIN.
A railroad company is liable for the negligence of its servants in starting a train, after it had stopped at a station, before a passenger had been given sufficient time to get off, and suddenly stopping it again, by which the passenger, who was on her way to the door, was thrown against the end of the car and injured; and where, in an action to recover for the injury, there was evidence tending to establish such facts, the court properly refused to direct a verdict for defendant.

In Error to the Circuit Court of the United States for the Northern District of Texas.

T. J. Freeman, R. L. Stennis, and B. G. Bidwell, for plaintiff in error.

Fred Cockrell and S. P. Hardewick, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

McCORMICK, Circuit Judge. In this case the single error assigned is presented thus:

"First. The court erred in refusing to give the special charge requested by the defendant, which is as follows: 'In this case the defendant requests the court to instruct the jury as follows: The plaintiff has failed by its evidence to make a cause of action against the defendant, and you are instructed to re-

turn a verdict for the defendant.' The ground of this error is that the plaintiff, on the whole case, failed to make out his case against the defendant. He failed to show any actionable negligence on part of the defendant in any way, or that it did anything in the premises but what was its duty to the plaintiff's wife at the time, or that it negligently did or performed such duty. It is shown that the plaintiff's wife was guilty of contributing negligence in not leaving the train when she arrived at her destination. The train waited long enough for her to have done so before it started on its journey."

On the trial more than 20 witnesses were examined. It is not disputed that the plaintiff's wife was a passenger on the defendant's train at the time and place alleged in the declaration. The plaintiff claims that she was seriously injured by the negligence of the defendant's servants in failing to give her timely and proper notice that the train was about to arrive or had arrived at the station at which they knew she was to leave the train; that, upon the train's stopping at that station, she, by looking out of the window, saw that it had arrived at Roscoe, and promptly endeavored to leave the train; that by the time she was able to move a few feet from her seat towards the door of exit the train began to move ahead, and when she had reached the doorway the train was stopped by the servants of the defendant company so suddenly and abruptly that she was brought in contact with some part of the car by the door, and without any fault on her part, from which she received serious injury. The plaintiff and his wife live at Roscoe, Nolan county, Tex., a station in that county west of Sweetwater, the county seat. She is 33 years old; has 8 children, the age of the oldest being 15 years. She testified that the last time she was weighed her weight was 176 pounds. She testified that as the train reached Roscoe that day she did not hear the station called; that, if it was called, she did not hear it. Another witness—Miss Fannie Patterson—testified that: "As the train was approaching Roscoe that day, a station was called, but not Roscoe. Eskota was the station that was called when the train approached Roscoe." Eskota is a station east of Sweetwater.

The plaintiff's wife, Mrs. Fannie Nunn, testified:

"I came to Abilene on the morning train, and went back on the evening train the same day. When the evening train passed Abilene that day, I bought my ticket, and got on the train. I got my ticket at the ticket office, and got on that train by virtue of a first-class ticket. The train was on time. It was four o'clock and some minutes in the afternoon when the train got to Abilene. I went to Roscoe on that train, and was taken off the train at Roscoe. I was hurt in trying to get off the train at Roscoe that day. The best I remember, I was sitting about middleways of the coach, or might have been a seat or two from it. I was sitting on the south side of the coach. I took that seat when I got on at Abilene, and remained in that seat until I got to Roscoe, and went to get off. I went to get off at Roscoe, because that was the end of my destination. I arose from the seat to get off when I noticed that the train had stopped, and when I had got about two or three seats from where I was sitting the train started. I knew I was at Roscoe by the stop of the train. I was reading a book, and when the train stopped it moved me in my seat, and I looked out of the window, and saw I was at home. Then I closed my book, and gathered my bundles to get up and start, and dropped my purse, and stooped down to pick it up hurriedly, and started out. I got to the door of the train. When I arose from my seat, and got the purse, and picked it up, and started out, the train was not moving when I started out. I started towards the west door. The train remained standing until I was two or three

seats from where I was sitting, and then it started again. I just kept on going to the door. I got to the west door of the coach, and there was a man in the next coach that saw I wanted to get off, and he rung the bell, and the train stopped. It just stopped all of a sudden, and jerked me back against the door. I think I struck the door. I struck something. That was the west door of the coach,—the outward door,—and that is the door that I think I struck, and it just jerked me around. That was in the negro part of the coach. When the train stopped, I fell back. I did not fall off my feet. It just jerked me around. It just seemed like it stopped my circulation. And the conductor, Mr. Garrett, was the first one I saw, and I told him to come to me, that I was hurt, and he was coming up behind, and he says, 'Oh, I hope not;' and I began to turn blind then, and I says, 'Oh, take hold of me; I feel like I am going to faint:' and he came up, and, of course, he hesitated to take hold of me; and I told him the second time, I says, 'Take hold of me, and don't let me fall,' and then he took hold of me, and then I saw Byron McBurnett coming to the coach, and I called to him to come to me, that I was hurt; and I fainted, and could not testify positively about anything until they put me in a chair. That chair was on the ground. They say I was carried into the depot, but I don't know. I was afterwards carried home. When I struck something in the car, the bruise that was made was right low in my back. After that I was carried home, and remained there a long time, and confined to my bed in my room. I was not in bed all the time, but I was confined to my room three months, and after the three months I got so I could go about on crutches. The effect of that bruise on my back was that it just seemed like when they moved me it, nearly killed me."

Mrs. Jennie Campbell testified that several days after the injury was received she saw a bruised place on Mrs. Nunn's back; that it was about the small of the back somewhere, three or four inches long, and ran up and down the spine; that when the witness went to rub her hand over it Mrs. Nunn jumped, and told her not to do that; that Mrs. Nunn's actions at the time indicated that the place was very sore.

S. M. Garrett, the conductor, testified:

"I saw her [Mrs. Nunn] before she went through the partition. There was a partition in the car,—one part for colored and one for white,—and I saw her before she went into the colored part; just before that. She was passing out just as I came in. I followed her right on through, and was just a few paces behind her, and overtook her before she got to the door. When I overtook her, she turned around and stopped at about the front seat, is my recollection, and she says to me, 'You came near taking me by,' and I says, 'No, we were looking out for you,' and I says, 'You are nearer the depot than you were; you don't have quite so far to walk,' and she says, I believe, 'Let's get off.' and she turned around and she says, 'I believe that I am hurt,' and I says, 'What could have hurt you?' She says, 'The door swung out and struck me in the back,' or something in those words, as near as I can recollect it, and I says, 'I hope you are not seriously hurt.' and told her to let's get off, and we kept on advancing towards the door, and she says, 'Yes, I think I am pretty badly hurt,' and commenced to tremble about that time, and her hands were shaking, and she threw her head back, and I caught her, and supported her, and eased her down on a seat, and told the porter to bring in a chair, and we carried her out in this chair."

### Byron McBurnett testified:

"I was at the depot at the time, standing on the platform, near the tracks, at Roscoe. I was there at the time Mrs. Nunn came into Roscoe on the train that evening, and saw the passenger train come in. When the train first came in that evening, it did not run up quite as far as it usually did, but just came to a stop, and then started up. It just stopped about four or five seconds, I suppose, and then run up, I guess, twice as far as across this room, and all at once it just stopped all of a sudden, and I was standing between the office door

of the depot and the car that she was on. The train stopped twice. It stopped for an hour or an hour and a half the second time, something of that kind. When it stopped the first time, it remained standing about four or five seconds."

### Mrs. Mattie Wood testified:

"My house was about two or three hundred yards from the depot. * * * That evening, when the train came in, I was sitting at my north window, and saw the train when it came in, and saw it when it stopped at the depot. I don't know exactly, but I don't think the train stopped the first time but a very few seconds. The next time it stopped it stayed at the depot a good while,—when it stopped there, and she got hurt. I am a mighty poor hand to guess at things, but it did not seem to me that the train stopped more than a few seconds the first time. There was nothing special that directed my attention to the train, only that it stopped in an unusual place, and then started on and stopped the second time."

It is not necessary to recite the testimony further. There is much conflicting testimony, but what we have already given tends to support the allegations that the defendant's servants were negligent in the matter of allowing the plaintiff's wife sufficient opportunity and time to safely leave the train at Roscoe, and in stopping the train in the circumstances in which it was stopped in the manner indicated by the testimony we have quoted. It was the duty of the defendant to allow Mrs. Nunn a reasonable time and reasonable opportunity for her egress from the train; and if the defendant's servants put the train in motion without having afforded the plaintiff's wife reasonable time in which to leave it, and she was, while endeavoring to leave it, injured by the sudden stopping of the train, the defendant is liable for damages so incurred. Railroad Co. v. Harmon's Adm'r, 147 U. S. 571, 13 Sup. Ct. 557, 37 L. Ed. 284. The view that the jury took of the testimony is clearly indicated by the verdict. Whether the evidence, considered all together, is sufficient to support the verdict, is not the question before us; but whether there was such evidence in the case that reasonable men might fairly differ upon the question as to whether there was negligence on the part of the defendant's servants or not, and as to whether the plaintiff's wife received injury or not, if there was such evidence, the determination of the matter was for the jury, and it was clearly the duty of the trial judge to submit those issues to them. Southern Pac. Co. v. Burke, 13 U. S. App. 110, 9 C. C. A. 229, 60 Fed. 704; Id., 23 U. S. App. 1, 9 C. C. A. 229, 60 Fed. 704; Railway Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485. We think we have shown by the testimony above set out that there was such evidence in this case.

We consider that the defendant's assignment of error is not well taken, and the judgment of the circuit court is therefore affirmed.