Luisa Pillot, Plaintiff and Appellee, *v.* White Star Bus. Line, Inc., Defendant and Appellant.

No. 8312. Argued June 28, 1941.—Decided July 15, 1941.

*Celestino Iriarte, F. Fernández Cuyar,* and *H. González Blanes* for appellant. *Ciro Malatrasi, Jr.,* and *Víctor M. Marchán* for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the court.

The appellee has moved to dismiss the present appeal on the ground that the same is frivolous. On June 23, the day set for the hearing of the motion, there only appeared counsel for the appellee. The appellant appeared by brief. The appellee was allowed five days for filing also a brief setting forth the grounds for her motion. She did so accordingly, and a copy of her memorandum was served on the adverse party on the 27th of last June.

This is an action for damages. The defendant denied generally and specifically the averments of the complaint and set up as special defenses that the complaint did not state facts sufficient to constitute a cause of action; that the proximate cause of the accident was plaintiff's negligence; that the accident in question was the result of the contributory negligence of the plaintiff; and that there was no negligence at all on the part of the defendant in such accident.

The case went to trial and the court decided it by a judgment, dated November 14, 1940, whereby the defendant was adjudged to pay to the plaintiff $650 and the costs.

In its statement of facts and opinion, the court weighed the evidence as follows:

"The evidence introduced by the parties showed, beyond any doubt, the following facts: That on August 15, 1939, the plaintiff boarded, at Las Monjas Race Track, as a passenger paying her fare in advance, one of the motorbuses of the defendant generally known by the name of 'guaguas', driven and operated by a chauffeur in the employ of the defendant named Guillermo Blandin, in order to go from the race track to Stop 22½ in Santurce, P. R.; that before reaching the above Stop the plaintiff rang the bell to warn the driver of the vehicle of her intention to alight at that place and that the latter started to reduce the speed of the vehicle and finally brought it to a stop at said place, and that just as the plaintiff was alighting and while standing on the footboard the conductor of said motorbus suddenly started it, without waiting for the plaintiff to alight altogether, throwing her to the ground; that as the result of her fall plaintiff suffered the fracture of her left arm and a lacerated wound on her left leg, being treated first in the Municipal Hospital and then during three months in the 'Pereira Leal Clinic' in Río Piedras; that she is suffering somewhat from atrophy of the wrist and can not close the hand; that prior to the accident the plaintiff worked as a laundress and used to make $15 a month, but now she can not wash although she can iron.

"We give no credit to the testimony of the witnesses for the defendant as to the way in which the accident occurred.

"According to their testimony, the plaintiff rang the bell and right away and without waiting for the motorbus .to stop, she rushed out while the vehicle was moving. It is incredible that a woman like the plaintiff whose faculties according to the very witnesses of the defendant, were quite normal, should, after signalling the driver of the motorbus her intention to alight at a certain place, get up from her seat and forthwith, before the vehicle stopped, rush out into the street. Said witnesses have not succeeded in conveying to our mind such moral certainty as is carried to the judge's mind by those witnesses who deserve full credit.

"We reach the conclusion that things did not happen as testified to by the witnesses for the defendant but as asserted by plaintiff

and her witnesses, that is, that when the motorbus approached Stop 22½ in Santurce, the plaintiff rang the bell; that on hearing it the driver slowed down and brought the motorbus to a stop and that when he saw that Martín Pérez, a passenger and witness for the plaintiff, had alighted from the same, he started the vehicle without being aware that just then the plaintiff was descending from it.

"The driver did not care how many passengers were alighting from the motorbus and was not on the alert to see to it that they paid their fares before getting off, as all of them had paid it when boarding the vehicle at the race track, and this is why he did not notice that two passengers were going to alight although the bell was rung only once."

And it concluded thus:

"The defendant is a corporation engaged in the public service and the transportation of passengers upon payment of their fares, and its duty to transport passengers includes that of taking every necessary precaution for the safety of such passengers when alighting from its vehicles, and if it fails to perform this duty it becomes liable for negligence. It has already been held in this jurisdiction that it is the duty of the driver of a motorbus engaged in the transportation of passengers to exercise extraordinary care for the safety of its passengers. *Polo* v. *White Star Bus Line, Inc.*, 54 P.R.R. 229; *Rodríguez* v. *White Star Bus Line, Inc.*, 54 P.R.R. 294.

"It is a well-known doctrine that where a public carrier stops to deliver a passenger its duty is to wait as long as necessary until such passenger gets off the vehicle in which he was transported, and that if while said passenger is alighting the vehicle starts again and he is hurt, said carrier is guilty of negligence."

It then cited various authorities, with special mention of the decision in *Washington & Georgetown R. Co.* v. *Harmon's Administrator,* 147 U. S. 571, 583, in the following terms:

"The Supreme Court of the United States of America, upholding the right of any passenger to assume that an electric tramway will not proceed on its way after stopping for such passenger to alight therefrom, expressed itself as follows in *Washington & Georgetown R. Co.* v. *Leon Tobriner,* 37 L. Ed. 284:

" 'The duty resting upon the defendant was to deliver its passenger, and that involved the duty of observing whether he had actually alighted before the car was started again. If the conductor

failed to attend to that duty, and did not give the passenger time enough to get off before the car started, it was necessarily this neglect of duty that did the mischief. It was not a duty due to a person solely because he was in danger of being hurt, but a duty owed to a person whom the defendant had undertaken to deliver, and who was entitled to be delivered safely by being allowed to alight without danger.' ''

The only question involved in this appeal, therefore, is the weighing of conflicting evidence, and the judgment appealed from can only be reversed if manifest error, passion, prejudice, or bias on the part of the court *a quo* are shown.

██ It is true that the appellee in her motion to dismiss the appeal failed to set in detail the grounds of frivolousness relied on, but she did so in her oral argument at the trial and afterwards, painstakingly, in the memorandum presented by her by leave of court. Such memorandum was notified to the other party who was accorded an opportunity to answer but failed to do so. Said party filed the record of appeal on May 20, 1941, and failed to file its brief within the required period. On May 29 it moved for a thirty-day extension, which was granted, and on the 28th of the following June, when, if it had filed its brief, it would have had an opportunity of not only arguing its case in its entirety but also of making the brief serve as an answer to the memorandum in support of the motion to dismiss already submitted; it applied instead for a further thirty-day extension which was granted without prejudice to the motion to dismiss.

Motions alleging frivolousness should not be resorted to as substitutes for regular hearings on the merits. However, where it appears that the appeal is merely dilatory and that the judgment must necessarily be affirmed, then such motions lie even though their disposition should involve the merits of the case.

In *Matos* v. *Heirs of Gómez de Agüero,* 43 P.R.R. 893, it was said: ''In a motion to dismiss an appeal as frivolous

the court may examine and consider the errors assigned and go into the merits of the case, and the appeal may be dismissed if it appears that the grounds and errors relied on are frivolous.''

We have considered the record filed by the defendant itself in the light of the memorandum of the appellee and we are convinced that the exceptions taken by the defendant at the trial are without merit and that the weighing of the evidence by the trial court can not be altered. If the amount of compensation granted is faulty in any respect, it is for being too small. The plaintiff claimed $2,500 and costs and $500 for attorney's fees, and the amount of the judgment was $650 with costs only, notwithstanding that it had been shown that as the result of the fall plaintiff suffered the fracture of the left arm and a lacerated wound on the left leg and was treated first in the Municipal Hospital and then treated during three months in the Pereira Leal clinic, in Río Piedras.

Once it appears by virtue of a proper motion that a case of that character is involved, the same should not be allowed to continue any longer on the calendar of the court, especially where, as happens in the instant case, because of the proximity of the closing of the present term of the court and the greater number of cases which are now ready to be set for the next November term, the delay would probably be of six months.

The motion is granted and, consequently, the appeal is dismissed as frivolous and the judgment appealed from affirmed.