No. 14,362.

J. T. LINDSEY ET AL. VS. THE TIOGA LUMBER CO., LTD.

## SYLLABUS.

1. If after a civil case, trial by a jury has begun and evidence adduced, one of the jurymen falls sick and is forced to withdraw, the district judge has the authority, in the absence of a demand from either plaintiff or defendant, that the whole jury be discharged, or that the case be postponed or continued, to have another juryman substituted and the trial proceeded with, neither side objecting to the proceedings subsequent to the substitution.

2. An employer who places an inexperienced youth around machinery at a dangerous place, and at work calling for notice or warning of the danger to which he would be exposed and the special necessity of vigilantly watching the movements of his fellow workman, is charged with the duty of giving such notice and warning, and if he fails to do so is liable for damages for resulting injuries. If the injury came from the negligence or fault of his fellow workman, the employer would be liable not for that fault, but for his own fault in placing the injured party at work and in such place without warning.

3. An unskilful or even an imprudent act on the part of a workman is not necessarily a fault on his part. The unskilful or imprudent doing of an act may, under some circumstances, be imputable as a fault to the employer who was charged with the legal duty either of preventing or guarding against it, by proper instructions or warning, or of declining to make the assignment to the work.

APPEAL from the Thirteenth Judicial District, Parish of Rapides —*Blackman, J.*

The plaintiffs in this suit are the father and mother of Dan Lindsey, a minor, who died from the effect of injuries received by him while in the employ of the defendant company.

It is charged that the deceased had been working for defendant about five days, his employment being to catch lumber after being dropped from the saws, to the live rollers on its way to the edger, at the plant of the defendant company; that he was placed at a point between the edger and the live rollers, and as the lumber dropped from the saws and was

Lindsey et al. vs. Lumber Company, Limited.

carried on these live rollers, the end of a piece of lumber struck him across the lower portion of the body, with sufficient force to shove him from his position against the edger and inflicted upon him a serious wound, which caused his death about twenty-four hours after the accident.

That their son was a boy, inexperienced as a mill hand, and being placed by the defendant in this dangerous position, it was defendant's duty to have informed him of the danger of the position, which they failed to do. That the position in which he was directed and ordered to stand to perform the labor and work he was set to do was attended with and he was subjected to greater danger than was necessary for the proper exercise of the functions of his employment. That the machine in use and through the use of which their son was killed, was faulty, old style and defective, and entailed great and unnecessary risk and danger upon the employees, and that the plant was faulty and defective in its construction, and the situation and location of the machinery therein, and that the accident complained of was due in great measure to this faulty construction and location; that the injury and its results were occasioned by gross, wanton, criminal negligence of the defendant company.

That defendant carelessly and negligently failed and refused to give the deceased instructions as to how to guard against danger in the exercise of the duties placed upon him by the commands of his employers, although they well knew they were placing him in a dangerous position, and he knew nothing of the manner of catching lumber from the live rollers and of the danger of the lumber striking him in its passage from the live rollers, and that it was absolutely necessary that he have such instructions; that their son was a common laborer, having no experience in said work and that the loss of his life was caused by no fault or negligence of his, but wholly by the fault and negligence of defendant and its agents in commanding and failing to give him any instructions as to the character of the work which he was expected to perform, and the means of guarding against accidents in performing such work. That he was a youth seventeen years of age, strong and enjoying good health. That defendant hired him without their consent and knowledge, and after his wound and subsequent death they could easily have notified the father and mother of the accident to him, so

that they might have been with him at his death; that the company absolutely refused and failed to notify them, but attempted to keep it a secret from them, and it was fully two months after his death before they received notice of the same, through a friend. They averred that they had been damaged in the sum of five thousand dollars in the loss of his association, and comforting aid and assistance their son would have been to them in their support and in the grief and bereavement they had suffered.

Defendant, after pleading the general issue, denied specially that any accident occurred to the deceased through any fault or negligence of theirs. They averred that if any accident happened to him, it was his contributory negligence and on the account of the negligence of his fellow servants, who were working with him on the live rollers.

They denied that deceased was a minor, and that they knew who his parents were, or that they sought to conceal his death, and had refused to notify his parents.

They specially denied that the deceased was subjected to any danger by their order, and averred that the deceased sought from them the employment at which he was said to have been hurt. They denied that the machinery used by them and by which the deceased was said to have been injured, was faulty, old sayle or defective, or that it entailed greater and unnecessary risk and danger upon the laborers than was usual and necessary; they denied that it was defective in its construction, location and situation. The case was tried by a jury, which returned a verdict of five thousand dollars damages in favor of plaintiffs against defendant.

After an unsuccessful attempt to obtain a new trial defendant appealed.

*Wallace & Moss (Ryan & Blackman,* of Counsel), for Plaintiffs, Appellees.

*White & Thornton,* for Defendant, Appellant.

The opinion of the court was delivered by

NICHOLLS, C. J. Before reaching the merits we have to dispose of a question raised by a bill of exceptions, which we find in the record taken

by defendant. The bill recites that on the trial of the cause, after a jury of twelve had been empannelled, the pleadings read, testimony partially adduced and the trial proceeded with for one day, that on the morning of the second day one of the jurors, who had been sworn in the case, was reported sick, and unable to attend court, whereupon the presiding judge ordered that additional jurors be summoned as in case of talesmen to supply the place of the said Charles Turner, to which ruling counsel for defendant objected on the ground (see Moffat vs. Koch, 106 La.) that it was incompetent after a jury had been empanelled, a part of the testimony adduced and the trial proceeded with, to discharge a juror and select another to proceed in his place, which objection was overruled for the following reasons:

"By the Court: Charles Turner, one of the jurors, was too ill to attend court, being confined to his room with fever, and so notified the court. The court ordered an additional juror to serve in the place of the said Turner. One juror was offered and both parties accepted him and the other jurors were sworn over. I ordered the case to be proceeded with *de novo* by reading the pleadings and introducing the evidence. The authority to do this on the application of either plaintiff, I think is fully recognized by the authorities, particularly the decsions of our Supreme Court, in 8 La. 563-565, and 39 Ann. 868 (State vs. Moucla), and authorities there referred to. Unless this power can be exercised by a judge a civil jury case could be protracted almost indefinitely at great costs, delay and inconvenience to litigants and witnesses. There can be no resulting injury to defendant, and in this case both plaintiff and defendant accepted the additional juror."

Counsel of defendant, before us, questions simply the right and power of the court, under the circumstances shown, to have substituted a new juror for the sick one without his consent. If the substitution itself, he says, was legal he has no complaint to urge against the regularity of the subsequent proceedings. He argues that the trial could not have legally proceeded in the absence of the juror, that therefore the situation forcedly required either that the jury should be entirely discharged and matters taken such shape thereafter as would follow legally as the result of a mistrial, or that the case should either be postponed or continued to await the result of the juror's illness. He says he does not claim the right to select any particular juryman, but the jury being complete,

accepted and sworn and the case entered into, he had the right to insist upon retaining him.

We have, on a number of occasions, stated that the right of litigants in respect to jurors, is not a right of *selection,* but of *rejection.* The claim urged here is one of *"retention."* That the court had the power and right to have made the substitution, if done with counsel's consent, is not denied; it is not, therefore, the "authority" of the court which is impugned, but the circumstances under which this authority was exercised. Defendant did not seek to have the juror retained through a demand to have the trial either temporarily postponed or continued. Had he made a demand to that effect, we assume it would have been acceded to. This was the only form under which *"retention"* of the juror could be made to take the shape of a "right," for this asserted right would have disappeared at once before the unquestionable authority of the court to have discharged the jury. (Henry vs. State, 4 Humph 270.) When counsel did not urge his right to a postponement or a continuance of the case, we think he lost his vantage ground, and left the action taken by the court free from any reasonable complaint. Thompson & Merrain, "Juries," chap. 13, sec. 273.

The person injured in this case was a youth seventeen years of age, differing in no particular respect from boys of that age. The evidence shows that he was utterly unfamiliar with the machinery of a saw mill. He had been employed at the mill only some seven or eight days, his employment being outside, in the yard, assisting in taking logs from the pond. On the morning upon which he was injured, the mill being short-handed, he was called from this work into the mill by the foreman of the establishment, and assigned to the work at which he was injured without any warning or instructions whatever. Counsel of defendant in their brief say: "There was nothing in his mental or physical condition that called for any particular instruction or warning, considering the nature of the work that the foreman called on him to perform; that work not being connected with the handling or directing the movement of any machinery. As to the danger of that position, that question is so closely connected with the manual duties to be performed, that they must be considered together. The place was what is known in saw-mills as the "hole" or "box," and is shown to be a necessary place in all saw-mills, and in area was about six to by three feet,

.which area. could be lengthened by pushing up a movable barrier. There was room enough in it for the needs of the workmen standing there, and it was properly located and constructed.

The work to be done there by Lindsey (the deceased) was to assist in removing plank that was passing down the live rollers and placing them on a platform from whence they could be sent to an instrument called the "edger" when necessary, though Lindsey's duty ended when the plank was placed upon the platform. In the performance of this work he was assisted by another workman, a man named Womack, who also managed what is called the "cut-off saw" at his end. The method by which Lindsey worked was to insert a hook into the end of the plank and pull it forward on to the platform mentioned. He did not have to lift the plank, but simply to pull it forward, while Womack did the same at his end. There was no possibility of this live roller being blocked up with lumber by not removing it, for if the lumber on it was not touched, it would pass on and fall into a space prepared for it underneath the mill, the roller working somewhat after the principle of a cane carrier in sugar mills. "And it seems that it was only the lighter lumber like plank that was to be removed when it was desired to saw or trim them, the heavy pieces being carried on and otherwise disposed of. It can be readily concluded that the task assigned to Lindsey did not require the exercise of any special strength and this is the opinion expressed by all the witnesses.

As to the degree of skill and experience required to perform the work, there is variance in the testimony, but the great preponderence of it is on the side that it did not require either skill or previous experience; that it was not a complicated case to work at and did not require any special skill, the duty consisting in picking up the end of a plank and moving it properly, also that Lindsey had been there long enough to know how to catch the end of the plank and move it. Lindsey was not placed in charge of any machinery dangerous or otherwise. He had nothing to do with the saws and was not injured by them. His work consisted simply in pulling one end of a plank from the live rollers as it reached him and placing it on a platform by his side, in order for it to be sawed by another man, and it was not the live rollers from which he was taking the plank that injured him. Either Lindsey was negligent about the attention to do his duties at

that particular time or that Womack failed to be as careful as he should have been. In the first event, the doctrine of contributory negligence, and in the second, the fellow servant doctrine barred recovery. In either event the plaintiff could not recover. If there was danger it was plain and open to view and easily avoided with ordinary care. Lindsey had been working long enough to be well acquainted with it. Lindsey himself sought the work upon which he was employed."

We are satisfied from the evidence that the place at which Lindsey was set to work, and that the work to which he was assigned were both dangerous and required some experience and called for notice or warning of the dangers to which a person employed in that place and that work would be exposed. Several of defendant's own witnesses testified as to the danger both of the place and of the work and to the necessity of knowledge and experience, and one of the workmen engaged at the "edger" urged and warned the young lad not to do the work, without specifying, however, what the danger was, or giving any instructions. It is useless and irrelevant to discuss what the danger of this particular place or what the danger of this particular work was relatively to the danger of other places or other work about a saw-mill, also whether the mill was short handed that morning or Lindsey sought the work. We have to confine ourselves to this special place and work.

It is very true that Lindsey was not placed in charge of a saw and did not operate machinery himself, and also true that he was not injured directly by the live rollers from which he took the planks, but he was surrounded by machinery operated by other parties and he was injured by being thrown violently into the machinery, at the edger which was at his side or behind him by being struck, by a plank thrown from the live rollers by not being judiciously or skillfully handled by Womack and himself, jointly, or by one or the other. Defendant argues that if the injury was occasioned by the negligence and fault of Womack, the action would necessarily be barred by the fellow servant doctrine, and if it was occasioned by Lindsey's own negligence his father and mother could not recover. If the work on which these parties were engaged was such as made it necessary for Lindsey's protection for him to be informed that the slightest error

Lindsey et al. vs. Lumber Company, Limited.

on the part of his fellow workman would carry with it great danger to himself, and that, therefore, he should specially watch all his movements and guide his own actions and conduct by them, defendant's company's foreman would certainly not be justified in permitting Lindsey to go to work under the impression and belief that it made no particular difference whether the two ends of the planks taken from the live rollers should be taken off simultaneously or not. If the effect of a failure on the part of either Womack or himself to seize the two ends of a plank simultaneously would be to throw one of the two ends of the plank crosswise, so as to be caught up by heavy timbers passing down the rollers and thrown violently back against the man opposite to it and pushing him into the edger machinery, he should certainly have been informed of this possible or probable danger so as to guard against it. If by reason of not having this information and not taking the precautions for safety which he would have taken had he known it, he receives injury, his employer is liable to him not for the fellow servant's fault, but for his own fault in not giving him proper information and warning. The fault of the fellow servant would be simply the occasion giving rise to the master's liability, the cause of the liability would be his own direct individual fault. If the injury to Lindsey should have resulted from his own act of omission or commission, it would by no manner of means follow that his employer would be relieved from liability by reason of that fact. An act unskilfully or imprudently done is not necessarily a fault on the part of the person who does it. The unskilful or imprudent doing of the act may be imputable as a fault to some one else who was charged with the legal duty of preventing or guarding against the omission to do so giving rise to a legal cause of action against him by the very party who committed the unskilful or imprudent act.

We are of the opinion that the deceased was not given the information and warning he was entitled to receive from the defendant company, his employer, and that the injury received by him was the result of that fact, and that the conclusions of the jury and the court on those points were correct.

We now turn our attention to the amount of damages which plaintiffs demand. This is a matter difficult to fix in a case where each and every factor which goes to make up the sum total is uncertain and

problematical. The deceased was a youth of seventeen years. When we come to estimate damages upon what would have been his length of life, we deal largely in conjecture for there are many matters as to which no testimony can be adduced. For instance, we can form no idea as to the occupations which he might have engaged in, the climate of the places in which he might have been called on to reside; his special habits and character as they would be developed later. We do not know whether he would have returned to his parents and, if so, how long he would have remained with them, nor can we form any idea as to the extent he would have recognized, in fact, his various duties towards them or been able financially to carry them out. The evidence shows that he had absented himself from his home and his parents knew nothing of his whereabouts. As matters stood at his death, he was practically no assistance to them. When we come to consider the grief and sorrow of a parent if they be allowable at all as elements of damage, how are they to be tested and how are they possibly to be gauged? Plaintiffs do not sue upon a derivative action from their son, but upon a direct cause of action in themselves conferred by law. Our Civil Code in Article 1934 declares, in matters of contract, the general rule to be that damages are the amount of the loss the creditor has sustained, or of the gain of which he has been deprived, but that there are cases in which damages may be assessed without calculating altogether on the pecuniary loss to the party, instancing "where the contract has for its object the gratification of some intellectual enjoyment, whether in religion, in morality or taste, or some congenial or legal gratification." As to these, the article says, "though these are not appreciated in money by the parties, yet damages are due for them by each; a contract for a religious or charitable foundation, a promise of marriage, or an engagement for a work of some of the fine arts, are objects and examples of this rule. It then adds: "In the assessment of damages under this rule, as well as in cases of offenses, *quasi*-offenses and contracts, much discretion must be left to the judge or jury, while in others they have none, but are bound to give such damages under the above rules as will fully indemnify the creditor whenever the contract has been broken by the fault, negligence, fraud or bad faith of the debtor.

In Downing vs. Railway Co., 104 La. 523, we referred to this subject saying, that though much had to be left to the discretion of the judge

.or jury, under this article, they should not act arbitrarily in the matter. We do not think this is a case entitling plaintiff to vindictive or punitive damages.

We think it due to the defendant to say that the charges made of .attempted concealment of the death of the son and of disregard of what was called for in the premises by feelings of humanity, are not only not sustained, but that the evidence establishes commendable conduct on their part. The parents of the youth were unknown to the defend-.ant and he did not seem disposed to give information on the subject. The defendant had him conveyed with proper assistance to the Charity Hospital at New .Orleans to be attended to, and, upon his death, furnished a neat coffin, caused him to be buried in a proper cemetery and paid all the expenses.

. The verdict returned is for too large an amount. The amount should be reduced. For the reasons assigned, it is ordered, adjudged and ·decreed, that the judgment appealed from be, and the same is amended by reducing the amount of the judgment to twenty-five hundred dollars, and as amended it is hereby affirmed. Costs of appeal to be borne ·by the appellee.

PROVOSTY, J., dissents.

Rehearing refused.