(38 South. 275.)

No. 15,401.

GRACIA v. C. N. MAESTRI FURNITURE MFG. CO.*

(Feb. 27, 1905.)

INJURY TO EMPLOYÉ—FAILURE TO WARN.

An employer who places a boy of 16 years at work in close proximity to a revolving circular saw attached to a dangerous machine is responsible for injuries to him resulting from his not having received the necessary warnings and proper information concerning the operation of the machine.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Frederick D. King, Judge.

Action by John Gracia, for the use and benefit of his minor child, against the C. N. Maestri Furniture Manufacturing Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Fenner, Henderson & Fenner and George Montgomery, for appellant. James Legendre and Edward Rightor, for appellee.

### Statement of the Case.

NICHOLLS, J. The defendant appeals from a judgment of the district court rendered in favor of the minor and against it for $6,000, with legal interest from the date of the verdict. The judgment was in conformity to and based upon the verdict of a jury. The action is one for damages for personal injury alleged to have been received by the minor son of the plaintiff through the fault and negligence of the defendant.

The defense made was a general and special denial, followed by a contingent plea of contributory negligence. Defendant averred that the injuries which plaintiff's son sustained resulted solely from his own negligence in failing to properly guard against risks which were entirely patent, and which he must be legally presumed to have assumed when he accepted the employment in which he was engaged at the time the accident alleged in the petition occurred.

It averred that if the accident to plaintiff's son was due to the negligence of any one other than the plaintiff's son himself (which it denied), the negligence was that of a fellow servant of plaintiff's son, for which defendant was in no manner responsible.

The averments of the plaintiff's petition

[1] Ante, p. 366.
*Rehearing denied March 27, 1905.

were that Henry Gracia was employed by defendant on April 4th last to help on the sanding machine at defendant's factory at St. Ann and Moss streets, in this city, and that he was so employed for several days when ordered by defendant's foreman to cease work on the sanding machine, and to catch the sawed pieces of lumber that were being cut by a circular saw or resaw machine in said factory, and to aid in its operation; that said machine was particularly made for weather boards and long pieces, and was being used to cut short pieces of lumber, for which it was unsuited, which said fact Henry Gracia knew not, and of which he was not informed.

That Henry Gracia was ignorant of the danger incident to the use or misuse of said machine, and that petitioner and his wife did not and would not have consented to their son being so employed; that he was given no instructions or warnings by his employer; that on Friday, April 11th, one of the boards which said machine was being fed began to jump, and that Henry Gracia, to prevent its breaking the machine or injuring him or others, caught the board and pressed it back upon the machine table, and that said board, before Gracia could release it, was caught by the saw, and Gracia's right hand was severed in twain, cutting off completely the three fingers and half of his hand.

Said Gracia was as careful as his age, experience, the situation, and machinery would permit, and that defendant was grossly negligent in making him do labor for which he was not employed and not skilled, in having him use dangerous machinery for purposes for which it was not suited, and all without warning or instructions; that Henry Gracia was strong and healthy before sustaining the injuries described, and that now he was crippled and incapable for life; that he had suffered and suffers great pain; that defendant was indebted unto the said Henry Gracia

for the pain and suffering he endures and had endured in the sum of $2,000 for the loss of his hand, its use and the power to make his living in the sum of $6,000, and for punitive damages in the sum of $2,000.

The court in the brief filed on behalf of the defendant is referred to Buckley v. Gutta Percha Rubber Company (N. Y.) 21 N. E. 717; O'Connor v. Whittall (Mass.) 48 N. E. 844; and Lowcock v. Franklin Paper Co. (Mass.) 47 N. E. 1000.

Counsel call special attention to the following language used by the Court of Appeals in the first of these cited cases:

"There is no rule of law that a minor cannot be employed about a dangerous machine, and the simple fact that a machine is dangerous does not make an employer liable for an injury received by a minor employed upon such a machine. All the law requires is that the minor should be properly instructed as to the danger to which he is exposed, and if he is injured because he has not received such instructions then, as a general rule, the employers can be held responsible. But where the minor is familiar with the machine, and its character and operation are obvious, and he is aware of and fully appreciates the danger to be apprehended from working the machine, the fact that he is a minor does not alter the general rule that the employé takes upon himself the risks which are patent and incidental to the employment. * * * We think it is preposterous to say that it was the duty of the employer to warn him not to put his finger between the cogs. * * * It might as well be required to warn a boy of 12 years old, who was working about boiling water or a hot fire, not to put his hand into the water or the fire."

The facts of that case seem to have been that the plaintiff, a boy 12 years old, had worked at defendant's machine several days before he was injured. While putting a cylinder in place, which was part of his duty, his foot slipped, and, involuntarily throwing out his hand to prevent himself from falling, he thrust it into a set of cogwheels; that it was not necessary in the discharge of his duty to put his hands within some inches of the cogs. Under that condition of things the court held that, the accident being the result of a cause over which defendant had no con-

trol, defendant was not rendered liable by failure to instruct plaintiff as to the danger of cogwheels, it being obvious.

In the O'Connor Case the court said:

"The plaintiff was injured by having his hand caught in the teeth of the roller and drawn in a machine. He was a little less than 17 years of age, and had never worked in a mill until he was set to work on the machine where he was injured, a few days before the accident occurred. He seems to have been a bright boy, and when he went to work he was shown how to spread the wool over the apron, and was told to look out for the roller, and said in reply, 'All right.' It must have been apparent, even to a boy of his limited experience, that it would be dangerous to get his hand caught in the teeth of the roller, and that that was liable to happen if his hand got too near it. * * * There was nothing, we think, which, making due allowance for his youth and inexperience, he could not and did not appreciate and understand. We think, therefore, he must be held to have assumed the risk."

In the Lowcock Case the syllabus was:

"A boy of fifteen years of age for a month was employed to put paper between a revolving cylinder and a moving belt of felting. The belt was safe and flexible when at rest, and he could then put his hand between it and the cylinder. He knew the cylinder was hot. Held, that the employer was not negligent in failing to instruct the boy that his hand would be caught like the paper if he put it too far, as the danger was apparent."

Plaintiff's counsel, citing N. O. Pacific Railroad v. Gay, 31 La. Ann. 430, Fisher v. Hyland, 22 La. Ann. 31, and James v. Lumber Co., 50 La. Ann. 717, 23 South. 469, 44 L. R. A. 33, press upon us the weight which we should attach to the verdict of a jury in passing upon the facts of a case, particularly of one which viewed the machine at which the accident occurred while in operation, and on the merits they cite Chicago, M. & St. P. Ry. Co. v. Ross, 112 U. S. 383, 5 Sup. Ct. 184, 28 L. Ed. 787; James v. Lumber Co., 50 La. Ann. 717, 23 South. 469, 44 L. R. A. 33; Clairain v. Telegraph Co., 40 La. Ann. 178, 3 South. 625; Myham v. Electric Light Co., 41 La. Ann. 964, 6 South. 799, 7 L. R. A. 172, 17 Am. St. Rep. 436; and Whitworth v. Shreveport R. R., 112 La. 366, 36 South 414, 65 L. R. A. 129.

## Opinion.

Among the machines operated in the factory of the defendant is one referred to in this suit as a "resaw." The object and purpose of this machine is to convey lumber of different width and thickness forward through upright revolving rollers to a circular saw in the rear of the rollers, there to be sawed longitudinally into smaller pieces. The rollers are adjustable so as to admit between them lumber of different thickness. Directly in the rear of the rollers is a table called a "receiving table," through which the saw projects from below to the height needed for the sawing. The rollers revolve towards the saw and the saw towards the rollers. The table is from 15 to 20 feet long. Two persons are employed at the machine. One, at its front, called a "feeder," inserts one end of the lumber intended to be sawed into the rollers, which catch and move it forward to and beyond the saw. The duty of the second person is to receive the lumber after it has passed through the saw, and detach from it the smaller pieces into which the lumber has been sawed. If the lumber which has been sawed is long enough to reach the end of the receiving table the man receiving it stands at the end of the table, about 7 feet from the saw; but if it be shorter than this he has to move up the side of the table in order to take the pieces off, having (when pieces of timber 38 inches long are sawed) to take them off at a distance of about 18 inches from the saw.

The whole of the saw above the table is visible when no timber is passing through, but when such is the case the saw becomes more and more concealed from sight by becoming imbedded in the advancing timber. Until the saw becomes completely imbedded in the timber a portion of it to the rear remains visible. On the morning of the 8th of April short timber 38 inches long, ——— inches wide, and ——— inches thick were

being sawed. On the day before (April 7th) timber 15 to 18 feet long had been sawed. The persons at the machine on the 7th of April after 12 o'clock, and on the morning of the 8th, were Wallace Bourg, a boy about 17 years old, who acted as "feeder," and Henry W. Gracia, a boy about 16 years old, who acted as "receiver." The machine had been working several hours on the morning of the 8th, when three fingers of Gracia's right hand were cut off by the saw. He was at that time to the right of the receiving table, facing the rollers. The only witnesses present at the accident were Gracia himself and the boy Wallace Bourg. Gracia gave the following version of the affair:

"I was sawing small pieces of wood three feet long, one inch thick. and twelve inches wide. Wallace Bourg was feeding the machine, and when the piece of wood reached the saw it began to jump, and I grabbed at it to prevent any danger to us, and it knocked my hand in the saw, and the saw cut three of my fingers off. I was standing right by the side of the saw, near the back of it, when I got hurt. Wallace Bourg was feeding the saw, and I was catching behind by the side of the saw. The piece of wood had started to jump behind the saw, and I started to grab it to prevent it from flying off and hurting any one, and as I grabbed it, it struck my hand and knocked my hand in the saw. That is the result of it. My duty was to catch the boards behind the saw, but I could not do it very well on account of the board being too short. The speed of the saw made the board jump. It was too short. I got hurt about three hours after I started to work on that machine. I worked on the resaw the day before, but I was not sawing any short pieces of wood then. All that day (the day before) I was sawing long pieces of cypress boards, and the saw could not get through all the way, and I had to turn them over twice to the person feeding the saw and let the saw cut through the wood. When I was sawing those pieces I was at the back of the machine, and caught the pieces about four feet from the saw. There was no danger then from the saw. In sawing the short pieces my position was right on the side of the saw, but nearer to the back. When I was transferred to the resaw Mr. Gray told me to stand in the back and catch the wood, but I could not go in the back because the wood was too short, and I had to stand right by the side of the saw, within reach of the wood. When Mr. Gray put me to work on the first day he did not tell me all that I had to do was to stand at the end of the table and remove those pieces of wood from the table when they had passed through the saw. He told me to catch the pieces of wood—that was

before I was hurt—to catch the pieces of wood after it was sawed, and to turn them back to the man who was feeding. All I had to do was to take those pieces of wood and bring them back to the man who was feeding the saw, and let him feed the saw again, and afterwards put them in a pile. I had nothing to do with the operation of the machine. I worked at the resaw about two hours and a half on the first day. Mr. Gray put me on the second day at the resaw. I was standing. when hurt, on the left hand side of the saw. The board began to jump, and to prevent it from flying off and injuring any of us I grabbed at the board. It jumped because it was too short. It was three feet long. On the first day Mr. Gray told me I was to stand in the back and catch the long pieces— take those long pieces off, and pass them back to the man that was feeding the machine, and he would put them in the saw again, but there was no danger when we were sawing long timber."

The account of the accident by Wallace Bourg was that he was working with Gracia when he was hurt. They were working on the circular resaw. He (Bourg) was standing in front of the saw feeding it. Gracia was standing right at the side catching the short stuff. They were sawing timber 10 inches wide and about 36 inches long. Gracia was catching the stuff coming through the saw and passing it back to him. He had to shove the stuff back to him, so he could feed it through again. He worked with Gracia the day before he was hurt. They were sawing weatherboarding 18 to 20 feet long. On the day he was hurt the pieces which were being sawed were about 36 or 38 inches long. The saw began jerking the piece of wood up and down, and Gracia was trying to hold it down so as to keep it from flying back, and the saw was jerking the wood so much, and it jerked his hand in it. He knew Gracia was trying to hold it down. If he did not hold it down, it might have flown back and hit him (Bourg) back there. He was about four feet from Gracia when he was hurt. After the accident he kept on working. Mr. Gray was catching behind then. That was the last time witness fed it.

On cross-examination he said that when Gracia was hurt the machine was between them. He was facing the machine, Gracia

on the other side. Witness did not tell Mr. Gray after the accident, and before he (witness) was discharged, when he asked him about the accident and how it had occurred, that he had not seen it, as his back was turned at the time it occurred, and never saw it. "Mr. Gray asked me nothing about that. He asked me how the accident occurred," and witness told him the piece of wood was jumping up and down, and his hand caught in the saw; that Gracia's hand got caught in the saw; his hand fell in the saw. He did not tell Mr. Gray he did not see the accident. Witness had a piece of wood in his hand at the time. From the position he was in the roller constituting the machine did not obstruct his view. He could see right over the rollers—right over the saw. He could see it. The saw extended about 10 inches above the table and the rollers extended about 18 inches above it. The piece being sawed was about 12 inches wide. The board knocked Gracia's hand in the saw.

The defendant denied the fact that the piece of timber was jumping up and down at the time the accident occurred, and denied that it could fly off the table. Gray, the foreman of the company, testified in favor of the defendant on both of these points, but J. O. Bourg, the father of the boy Wallace Bourg, a benchman in defendant's factory at the time of the accident, a witness on behalf of the plaintiff, contradicted him squarely as to both. He testified not only that timber could and would jump up and down on the table, but that he had known it to be thrown off and back of the rollers.

C. J. Gilbert, witness on behalf of the appellant, who was at the time of the accident operating in the sash and blind department of defendant's factory, agreed with Gray that the timber could not and would not fly from the table, but, being asked as to what he thought of the timber jumping up and down, replied:

"That depends a good deal upon the class of timber he is sawing. It will bounce a little—raise a quarter of an inch possibly—because of the jar and vibration of the table, but it will never throw itself out, because the centrifugal force of the saw has the effect of drawing it over. The resaw, revolving in the direction of the rollers, will catch on to the lumber and press it down on the table. It is an impossibility for the lumber to fly off, but it will vibrate."

A. G. Koski, an employé of the defendant and a witness in its behalf, when questioned by defendant's counsel "as to this matter of the timber sometimes jumping up," answered:

"Well, as long as it is in the rollers it can't jump at all, and if the piece is too small, or anything, it cannot move any more than a half an inch or a quarter of an inch, if that. It never flies back at all."

Asked the question, "Supposing you were sawing with that machine, and, the saw being of a diameter of twenty-two inches, you were sawing a piece of timber which was so wide that the saw did not cut all the way through; that there was about an inch to a quarter of an inch at the top of the lumber that was not cut at all; suppose, in that event, the piece of lumber commenced to jump—how could the boy get his hand on the saw by putting his hand on top of that piece?" the witness answered he could not get his hand in the saw at all if the piece was covering it.

Gray, Gilbert, and Koski all concurred in saying that a boy employed as Gracia was, in catching the pieces from the saw, was in no danger, as all he would have to do would be to wait until the pieces came out beyond the saw, and then take them off. Gilbert qualified his statement by saying that there would be no danger to the boy "if he carried out his instructions." Being asked, "What instructions he would have to carry out?" he answered, "To remove the stuff after it passes the saw; that removes all danger." Being asked about the relative danger of the man catching the timber at the rear of

the saw in sawing long and short lumber, he said that in case of long lumber he was further from the saw, but there was no danger in the case of short lumber unless he put his hand in the saw, but there was no reason for putting his hand on the saw. If the piece of lumber began jumping up he should do nothing. That if he made a mistake, and took hold of it, that would be his mistake. He should not touch the lumber at all. He would consider it a piece of carelessness. He expressed the opinion that in this case the boy must have deliberately put his hand on the top of the saw, and cut it. From the questions propounded to the witnesses by plaintiff's counsel his evident theory was that the jumping up of the piece of wood on the table was due to the fact that, being a short piece, it had got free from and beyond the rollers, and that the "feeder" at the front had not placed in the rollers, immediately behind the piece which was going through, a second piece, which would form, together with that being sawed, a continuous length of timber, and thus prevent the shaking; but we do not think that, under the evidence, that theory could be sustained. It was shown that at the very moment when the accident occurred the machine stopped, and it was shown by both Gray and Wallace Bourg that when stopped the piece which was passing through had only been sawed through about one-half of its length, and Gray testified that at that time the piece had not yet been freed from the rollers. Besides, it was not shown that a second piece had not in point of fact been placed by the "feeder" in the rear of it. At the time of the accident a part of the saw (that furthest away from the rollers) was still exposed, while the balance of it was concealed, being embedded in the timber.

The failure of the plaintiff to establish the correctness of the particular theory which he had conceived as being the cause of the jumping up of the timber on the table does not prejudice his rights to a judgment, should he be entitled to one, upon any other theory which is supported and sustained by the law and the evidence in the case. If the timber did in fact "bounce" up and down, as one of the witnesses expressed (whatever may have been the cause thereof), it may well have given rise to and formed legally the basis of a cause of action by plaintiff's son against the defendant. We think that the evidence establishes, as a matter of fact, that the timber did jump up and down on the table. We can reach no other conclusion, unless we entirely throw aside the testimony of both Gracia and Wallace Bourg, the only parties present, and who saw what happened at the time of the accident. The jury evidently gave credence to what those witnesses said, though their credibility was attacked by the foreman, and there is nothing which would warrant us in disregarding their conclusion in that respect.

Defendant contends that, even if it were true that such jumping took place, the claim made that it might result in the flying of the piece of timber off from the table, to the probable or possible injury to Gracia or Wallace Bourg, was utterly without foundation. It was not essential for the purposes of plaintiff's case that there should have been actual danger to those parties at the time of the accident. The question is, was there such appearance of imminent peril as would give rise to a reasonable apprehension of danger by Gracia? Ought he to have known at the time that he had nothing to fear from such appearances? It must be remembered that he was a mere boy; that he had no prior experience about sawmills; that he had never been about them before his employment by the defendant, and then only for a few hours.

When this jumping took place (of the effect of which he was absolutely ignorant, not having been given any information on the subject by the foreman) it is not at all sur-

prising that under the circumstances and conditions in which he was placed the boy should have become alarmed at the probable consequences, and have imagined and believed that the proper course to avert disaster was to put his hand on the lumber, and attempt to hold it down upon the saw. This he did, with most unfortunate consequences to himself. It may be that his action was imprudent and injudicious; that (as one of the witnesses declared) he should have let the jumping go on, and not have touched the timber. That was the course which might have been reached by one familiar with the working of the particular machine, or with information given to him touching what might occur at the machine while he was working at it; what he would have reason to be alarmed about and what he should not be frightened at; what he should do and what not do in the event of this jumping taking place; but it was not that likely to be reached by a boy standing in the immediate proximity of a circular saw. We are satisfied, under the evidence, that the boy was placed at a very dangerous position to work, without having been given proper information and warning. We may accept as true that either on the first or second day when Gracia was at work the foreman, Gray, may have shown the latter the particular place at which he was to stand, and, by illustration for a few minutes, shown how the boards were to be caught and what was to be done with them; but that fell far short of what he should have told the boy, under the circumstances of his youth and utter inexperience. We think that, had he been given the proper information and warning which the situation called for, this accident would never have happened, and the defendant is responsible.

Defendant denies that Gracia placed his hand on the timber, or, if he did so, that his hand was jerked off onto the saw by the jumping timber. He insists that Gracia put his hand upon the saw itself. That is a mere declaration, without evidence to support it. Those who saw the accident say to the contrary. Gracia says he placed his hand on the timber. It is quite possible that it was placed on the timber near the saw, and the timber, moving forward, immediately took it into the saw. It is also quite possible that the shaking of the timber was due to the fact suggested by the witness, that the rollers were not properly adjusted for the timber being sawed that day.

The principles announced by this court in the cases cited by the plaintiff in our opinion find application in this. The facts here resemble, to a very considerable extent, those disclosed in Lindsey v. Tioga Lumber Co., 108 La. 468, 32 South. 464, 92 Am. St. Rep. 384, to which we refer. In that case the syllabus reads:

"An employer who places an inexperienced youth around machinery at a dangerous place, and at work calling for notice or warning of the danger to which he would be exposed, and the special necessity of vigilantly watching the movements of his fellow workmen, is charged with the duty of giving such notice and warning, and if he fails to do so is liable for damages for resulting injuries. If the injury came from the negligence or fault of his fellow workman, the employer would be liable not for that fault, but for his own fault in placing the injured party at work and in such place without warning."

An unskillful or even an imprudent act on the part of a workman is not necessarily a fault on his part. The unskillful or imprudent doing of an act may, under some circumstances, be imputable to the employer as a fault to the employé who was charged with the legal duty either of preventing or guarding against it by proper instructions or warning, or of declining to make the assignment to the work. The views so expressed are similar to those announced by the court in the James Case, modified as to language by different facts.

In Evans v. Louisiana Lumber Co., 111 La. 544, 35 South. 740, this court said:

"We do not say that it was a fault per se to have sent him (an inexperienced man) to work

at the latter place. It is unavoidable that men of that kind should sometimes be employed in dangerous places. for experienced workmen are necessarily workmen who have. moved forward in safety from a condition at one time of inexperience. It is, however, the duty of a corporation when it does employ inexperienced men in dangerous positions, directly under others having control and direction of dangerous appliances, to give the latter notice of the fact of such inexperience, and to caution them as to the necessity of exercising special caution towards insuring their safety. What we have said as to the duty of informing the foreman or others as to the inexperience of the men employed under them is equally true of the duty of giving to these inexperienced men proper information and warnings."

We are of opinion that the judgment appealed from is correct, and for the reasons assigned it is hereby affirmed.

BREAUX, C. J. I agree with the decision except as to the amount of the damages, which I think is too large.