O’NIELL, J.
The plaintiffs sued for $10,-000 damages for the death of their minor son, who was fatally injured while employed in the defendant’s sawmill. The trial before the district judge resulted in a judgment in favor of the defendant, rejecting the plaintiffs’ demand, and they have appealed.
The boy was about 12 years old when he was first employed at the defendant’s mill, and was 14 when he was killed. He was first given safe and easy employment, sweeping up trash and doing other such work requiring no skill and subjecting him to no danger. He learned to operate the lath machine and held that position for about a year before he was killed! While wrestling with another boy, during the meal hour, about four weeks before the fatal accident, he dislocated or sprained his left arm, and was sent home. A physician bound the arm in splints, which were removed about 9 days before the fatal accident. Four days before the fatal accident, the foreman of the defendant’s lath machine sent for the boy to return to work. He appeared at the mill at about 10 o’clock in the forenoon, with his arm bandaged, and, on account of his physi-1 cal condition, was not given his former position, which required the use of both arms, but was put to work binding laths in bundles, on the second floor of the mill. On this subject, the foreman, as a witness for defendant, was cross-examined and answered as follows:
“Q. Why didn’t you give him his regular job back when he came back? A. Because he could not operate the machine to suit me with Ms arm that way, so I put him on the [second] floor. Q. Then it was on account of the condition of Ms arm that you didn’t put Mm to work on the lath machine? A. That’s right. Q. But not because of any promise you made to Ms father? A. I didn’t make Mm any promises, except at the beginning when I hired him.”
The boy’s father had testified that, when the foreman requested that the boy return to work after his arm was injured, he (the father) consented on the express condition that the boy should not be put to work at any machine. The foreman denied that he had had any such conversation with the father of the boy at that time, and testified that, on the contrary, when he first employed the boy, he told the boy’s father that he would not agree to the condition that he should not be put to work on any machine. The testimony of the foreman’s brother corroborates this, in part at least. The foreman testified:
“He [the boy’s father] told me that he wanted his boy to work for me, but that he didn’t want him to operate any of the machines. I told him that I wouldn’t hire Mm under those conditions ; and he said to me, ‘If that is the way, I will promise to send Mm in the morning.’ ”
During the dinner hour, on the fourth day after the boy had returned to work at the defendant’s mill, he removed the bandage from his arm. At 5 o’clock that afternoon, while the boy was bundling laths on the second floor of the mill, the foreman sent a boy who was operating the lath machine on the ground floor on an errand to his (the foreman’s) residence, and ordered the plaintiffs’ son to take the other boy’s place at the lath machine. A few minutes after the plaintiffs’ son began *913 feeding tlie slats into the lath machine — one witness says it happened only 5 minutes after, another says it was 10 minutes, and still another says it was 15 or 20 minutes — a splinter struck the hoy in the throat and injured him fatally. He staggered, screamed, and asked for water, but was unable to say more, or explain how the accident had happened. He was taken to a physician’s office and treated promptly, but died there about two hours after being- injured.
The plaintiffs contend that the defendant neglected to keep the lath machine in repair and in a safe condition, knowing that the hood or cover was worn through, so that splinters from the saws could pass through and endanger the life of the operator; and they also contend that there was negligence on the part of the defendant’s foreman in ordering a child with a disabled arm to operate a dangerous machine.
The defendant’s answer is that the lath machine was of standard pattern and in good repair ; that the plaintiffs’ son was familiar with its operation and was aware of whatever danger he was exposed to; that the fatal accident was of a peculiar nature, not the result of an unusual operation of the machine, and was attributable, not to any defect in the machine, nor to any negligence on the part of the defendant, but only to the negligence of the boy who was injured while operating it.
The lath machine consisted of three small circular saws, revolving at a high rate of speed, having a pair of corrugated rollers in front, held together by a spring, and revolving slowly, so as to draw the boards to and beyond the saws, where another pair of corrugated rollers caught the ends of the laths and drew them out. The saws revolved toward the operator, who fed the boards or slats into the front pair of rollers, that drew them lengthwise to the saws that ripped them into laths. A wooden box or hood, made of one-inch cypress lumber, covered the saws, to protect the operator from the flying splinters and sawdust. At the lower edge of the-front of this hood or box, in front of the front pair of rollers, and at the back edge of' a shelf the height of the operator’s waist, was an opening just large enough to receive the-boards or slats that were to be made into laths. The lath material was first put through a bolting machine, that ripped it into-strips narrow enough to go into the lath machine. These strips were stacked on the hood or box covering the saws of the lath machine, where they could be conveniently drawn down by the operator,' one at a time, and passed through the machine continuously.
The constant friction of dragging the slats- or boards over the front edge of the cover or box over the saws wore a crack or hole there. And there is evidence to the effect that this weailng-out process was aided by the constant beating of splinters from the inside, in the upper front angle of the square hood. The foreman testified that he had to make a new box or hood for the lath machine three times during the four years in which he was in charge of that department of the mill. He had put in a new pair of rollers behind the saws about a month before the fatal accident, but could not remember how long it had been since he had renewed the wooden hood or box covering the saws.
At the time of the accident there was a-hole or crack worn through the upper front edge of the hood. One witness says it was the size of a pencil, another says it was as wide as his finger, and another (perhaps referring to the width or surface of the worn-place) says it was as large as a hen egg. The supposition is that this crack or hole had worn through the hood during the four weeks when the plaintiffs’ son was laid up with a sprained arm.
It is admitted that, in order to operate the-machine safely, it was necessary to give it a constant feed, keeping the end of the strip or plank entering the front rollers butted hard *915 against the end of the one going out? and when the supply of bolted strips was exhausted and the last one was placed between the front rollers, the operator had to step aside or step back out of the way, because it sometimes happened that the strip would break and “kick back” with great force. On this subject the foreman testified in part as follows:
“Q. So, therefore, to properly feed that mill, when you released the piece that you were holding with one hand, you had to catch another piece? A. You had to keep both hands going. Q. Constantly? A. Yes, sir. Q. And had to exert as much force with one hand as with the other? A. Yes, sir; because both hands had to work. Q. There was no way of arranging that machine so that it would operate otherwise? A. No, sir. Q. You tried both with new and old rollers? A. Yes, sir.”
[1] Under the doctrine announced in several decisions by this court, there was considerable negligence on the part of the foreman, in sending a boy with a disabled arm to do work in which, to avoid great danger to himself, he “had to keep both hands going constantly, and had to exert as much force with one hand as with the other.” We refer particularly to the case of Bourg v. Brownell-Drews Lumber Co., 120 La. 1009, 45 South. 972, 124 Am. St. Rep. 448; Gracia v. Maestri Furniture Co., 114 La. 371, 38 South. 275; Burns v. Ruddock-Orleans Cypress Co., 114 La. 247, 38 South. 157; Lindsey v. Tioga Lumber Co., 108 La. 468, 32 South. 464, 92 Am. St. Rep. 384; Parrenin v. Crescent City S. Y. & S. H. Co., 120 La. 75, 44 South. 990; Labatt on Master & Servant, vol. 1, p. 1280.
[2, 3] The defendant’s neglect to keep the hood over the lath saws in repair, so that it would protect the operator of the machine from the danger of splinters flying from the saws, is a serious charge of negligence, without regard to the injured arm of the boy. In fact, it is doubtful whether the boy’s physical inability to properly feed the machine had anything to do with the accident. The front rollers in the lath machine were located at such distance behind the opening through which the machine was fed that it appears to have been impossible for the splinter that struck the boy in the throat to have come through that opening. It must have passed through the hole or crack that was worn through the front edge of the top and upper edge of the front of the hood. The testimony of several witnesses supports this theory, and the defendant offered no evidence to contradict it.
One boy testified that, about a week after the plaintiffs’ son sprained his arm, while he (the witness) was operating the lath machine, the sawdust coming through the hole in the cover got into his eyes, so that he had to quit work. The foreman came and asked him what was the matter. He showed the foreman the hole worn through the hood, and the latter merely told him to go on and shove laths. A few days later, a splinter struck the same boy in the chest, about four inches below the throat, making a scar which was exhibited on the trial.
Thereafter another boy was put to work at the lath machine, and a splinter that passed through the crack in the hood struck him on the chin, inflicting a wound which required four stitches to draw the skin together. The foreman was théh present, and his attention was again called to the hole in the box. He sent the injured boy to a physician, and when the boy returned to work, soon after the plaintiffs’ son was killed, he found the hood of the lath machine in the same condition as when he was injured.
These minor accidents that preceded the fatal accident to the plaintiffs’ son are proven only by the testimony of colored boys; but the foreman -of the defendant company did not deny them, nor did any other witness.
A short time after the death of the plaintiffs’ son, the defendant consigned the old lath machine to the scrap pile and replaced it with a new one, which, under the doctrine. *917 .announced In Foreman v. Eagle Rice Mill Co., 117 La. 231, 41 South. 555, may be regarded as an acknowledgment of the worn-out condition of the machine.
Our conclusion is that the plaintiffs have discharged the obligation of proving with reasonable certainty that their son’s death was caused by the fault or negligence of his employer. The defendant’s counsel argues that the plaintiffs have failed to establish with any degree of certainty that the splinter which lodged in the boy’s throat had come through the hole worn in the hood over the lath saws. We think, on the contrary, that the fact that three similar, though not serious, accidents happened within as many weeks preceding this fatal accident, establishes the plaintiffs’ theory and charge of negligence with reasonable certainty. In one of the cases referred to above, Gracia v. Maestri Furniture Co., 114 La. 382, 38 South. 275, very similar in principle to the present case, it was held that the plaintiff was not required to prove precisely how the accident happened, provided there was negligence under either of the theories advanced by him, viz.:
“The failure of the plaintiff to establish the correctness of the particular theory which he had conceived as being the cause of the jumping up of the timber on the table does not prejudice his right to a judgment, should he be entitled to one upon any other theory which is supported and sustained by the law and the evidence in the ease.”
It is not certain that the foreman’s imprudence in sending a boy with an injured arm to do work that could only be done safely by the use of both arms contributed to the fatal accident, by the boy’s inability to keep the ends of the strips butted hard together, and by his permitting one to be smashed in the machine. 'But there was negligence on the part of the defendant in not repairing the hood over the saws after three similar accidents had resulted from that defect in the machine, and the foreman’s attention had been called to it. There is no reasonable doubt that this negligence on the part of the defendant company was the cause of the injury and death of the plaintiffs’ son.
The only remaining question is the amount of damages the defendant shall pay. It appears from the evidence that the plaintiffs’ son shffered great pain during the brief period from the time he received his injury until he died, for which suffering the right of action for damages survived in favor of the plaintiffs. It also appears that the proper relations existed between the parents and their child to justify the conclusion that severe grief and suffering was inflicted upon them by the violent death of their son. Following precedents heretofore established in the assessment of damages in cases somewhat similar to this, but without attempting to itemize the damages suffered by the deceased and by his surviving parents, we have concluded to fix the amount at $5,000.
It is ordered, adjudged, and decreed that the judgment appealed from be and it is annulled, and that the plhintiffs recover of and from the defendant the sum of $5,000, with legal interest from the date of this judgment, and all costs of this suit.