O’NIELL, J.
The plaintiff’s mother was killed by the collapse of a part of the balcony of a house which she occupied as the lessee, of the defendant. This action for damages was brought under the provision of the Civil Code that the owner of a building is answer *948 able for whatever damage results from his neglect to keep it in repair. The case was tried without a jury. Judgment was rendered in favor of the plaintiff for $2,000, from which the defendant has appealed.
The defense is that the rental paid by the plaintiff’s mother was sufficient to cover the cost of the repairs that were necessary, and that the woman’s death was due entirely to her own contributory negligence, in not having the necessary repairs made, and in going upon the gallery, which she knew was in a dilapidated condition.
None of the witnesses in the case saw the accident. Two men, from different places in the neighborhood, heard the crash of the falling balustrade; and, in response to the call of the little grandchild of the deceased, went immediately to the scene, where they found the woman lying on the ground, unconscious. Her skull was fractured; she was bleeding from the mouth and nostrils, and died 10 or 15 minutes after the accident, without having regained consciousness. Prom the position in which she was found on the ground, just beyond the edge of the balcony, and from the fact that the only part of the structure that had fallen was a part of the balustrade, the defendant contends that the accident was caused by the woman’s leaning against the rotten balustrade. The preponderance of evidence, however, is that the woodwork had rotted away to such an extent that the end of one of the joists or supports under the floor of the balcony slipped off of the corner post, causing the woman to fall against the decayed balustrade, which fell to the ground with her. Although the claim agent and the rent collector of the defendant company testified that the balcony held their weight after the accident, several witnesses testified that, immediately after the accident, one of the corner posts was leaning outward several inches from under the corner of the balcony. The lower rail of the balustrade was introduced in evidence, and is before us. It is so rotten that it will crumble under-pressure of the hand. The planks which formed the floor of the balcony were not- so badly decayed as the balustrade, but the nails had rusted out, or the wood had shrunk away from them so that the boards were all loose; and, according to the testimony, this condition might have caused the woman to fall against the railing.
[1] The defendant’s counsel concede that the plaintiff was not required to prove in detail exactly how the accident occurred, in order to establish that it was the result of the defendant’s negligence. See Thomas v. Planters’ Lumber Co., 137 La. 917, 69 South, 745, citing Gracia v. Maestri, 114 La. 382, 38 South. 275. But they contend that, if it be assumed that the accident was caused by the woman’s leaning against the balustrade, the defendant is not liable, because the dangerous condition of the balustrade was so apparent that it would have been negligence on the part of any one to lean against it. The defendant’s plea of contributory negligence, however, is a special defense; the burden of proof of which is shifted to the defendant when the plaintiff proves, prima facie, that the injury resulted from the defendant’s negligence. See Buechner v. City of New Orleans, 112 La. 599, 36 South. 603, 66 L. R. A. 334, 104 Am. St. Rep. 455, citing Inland & Seaboard Coasting Co. v. Tolson, 139 U. S. 551, 11 Sup. Ct. 653, 35 L. Ed. 270; Washington & Georgetown R. Co. v. Harmon’s Adm’r, 147 U. S. 571, 13 Sup. Ct. 557, 37 L. Ed. 284. The evidence before us does not justify the conclusion that the plaintiff’s mother deliberately leaned against the balustrade.
[2] In support of the contention that the plaintiff is prevented from recovering damages because her mother had the right to have the repairs made to the balcony herself and, pay for the same with the rent due to the defendant we are referred to the cases of Scud *950 der v. Paulding, 4 Rob. 428; Westermeier v. Street, 21 La. Ann. 714; Pesant v. Heartt, 22 La. Ann. 292; Diggs v. Maury, 23 La. Ann. 59; Winn v. Spearing, 26 La. Ann. 384; Welham v. Lingham, 28 La. Ann. 903; Lewis v. Pepin, 33 La. Ann. 1422; Brodtman v. Finerty, 116 La. 1106, 41 South. 329; and Bianchi v. Del Valle, 117 La. 591, 42 South. 148.
[3] The decisions cited have no application to the facts of the case before us. For example, Scudder v. Paulding, 4 Rob. 428, was an action by a lessee to annul the contract of lease and to recover damages for injury to his furniture on account of a leak in the roof of the building. It was held to be the right, not the duty, of the lessee to cause the repairs to be made, after the lessor had been notified and had neglected to have them made. Hence it was held that, as it had been in the power of the lessee to prevent or lessen the damage, and as he had preferred to stand by and let the damage go on, he could not put the loss upon the lessor. This is on the familiar principle that a person cannot base an action for damages, or for the annulment of a contract, upon a condition of affairs which he knew was going to happen and which he could have prevented without cost to himself. But the lessee in the case before us could not have known that the balcony of the premises which she occupied was going to collapse, although she knew it was in need of repairs, and perhaps knew it was in a dangerous condition.
Westermeier v. Street, 21 La. Ann. 714, was a suit by a landlord to recover the rent due him. The lessee claimed damages in re-convention for the loss of business, on the ground that the building was delivered in a leaky condition. It was held that the lessee had waived his action for damages by taking possession and paying the rent for several months without protest and without notifying the landlord that repairs were needed; and it was Isaid that, if the lessee had refused to make the necessary repairs, the tenant could have caused them to be made and deducted the cost from the rent, and could thus have prevented or reduced the damage of which he complained.
Pesant v. Heartt, 22 La. Ann. 292, was also a suit by a landlord to collect the rent due him, wherein the lessee claimed damages in a reconventional demand, alleging that his subtenant had been compelled to abandon his portion of the premises on account of its need of repairs. The demand for damages was rejected because the lessee had expressly obligated himself, in the contract of lease, to make the repairs complained of, at his own expense, and the rental had been fixed with reference to that obligation on the part of the lessee. It was said, unnecessarily, that, if the lessee had not expressly assumed that obligation, he would nevertheless have had the right to make the necessary repairs and prevent the loss.
Diggs v. Maury, 23 La. Ann. 59, was also a suit by a landlord for the rent due him, wherein the lessee claimed in reconvention that his furniture had been damaged because of the need of repairs to the roof. And again it was said that the lessee was aware that the injury to the furniture was going on, and that he could have prevented some, if not all, of the damage, by having the repairs made with the rent which he owed the lessor.
In Winn v. Spearing, 26 La. Ann. 384, the lessee resisted the demand for rent for the nine months that he had occupied the premises, on the ground that the lessor had failed to make certain repairs." It was held that the lessee had no right to occupy the premises indefinitely without paying rent; that his remedy was to demand that the lessor make the repairs, and if he failed to do so, to make them himself and deduct the cost from the rent due.
*952 In Welham v. Lingham, 28 La. Ann. 903, all that was decided was that the lessee had no right to abandon the leased premises and refuse to pay the rent because of the lessor’s neglect to make certain repairs, which would not have cost more than $50.
In Lewis v. Pepin, 33 La. Ann. 1422, the lessee’s demand for damages on account of a leaky roof was denied because the evidence showed conclusively that, in using the roof as a place for hanging out laundered clothes, the employes of the lessee had stopped up the gutters with old clothes, and had injured the roof by walking on it, and had caused it to leak. The doctrine of all of the foregoing cases, that the lessee could not recover damages which he knew were going on and could have prevented, was affirmed, with a significant expression that, however questionable that construction of article 2694 of the Civil Code might be as an original proposition, it was then too well established to be disturbed.
[4] Although the foregoing cases were cited in support of the decision in Brodtman v. Finerty, 116 La. 1103, 41 South. 329, they were not at all appropriate. In this last case, the lessee sued the lessor for damages for an injury inflicted on the hand of the lessee’s wife by the falling of a shutter or blind while she was attempting to close it. The complaint was that the lessor had neglected to have a new hinge put on the blind or shutter on the leased building, after he had been notified that it was broken. It is plain that the lessee had no right or cause of action in that case, because the Civil Code expressly provides that it was his duty, and not the duty of the lessor, to make such repairs as were necessary to the windows, shutters, and hinges of the leased premises. Article 2693 of the Civil Code provides that the lessor—
“ought to make, during the continuance of the lease, all the repairs which may accidentally become necessary; except those which the tenant is bound to make as hereafter directed.”
And the next following article declares that, if the lessor does not make the necessary repairs required in the preceding article, the lessee may call on him to make them; and, if he then refuses or neglects to make them, the lessee may (not must) himself cause them to be made, and deduct the cost from the rent due. Then follows the provision that the lessor guarantees the lessee against all vices or defects which may prevent the use of the premises, even thou'gh the lessor was not aware of the vices or defects when the lease was made, and even though the vices or defects may have arisen after the contract of lease was entered into, provided they were not caused by any fault of the lessee—
“and, if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same.”
But, turning to the next section of the Code, treating of the obligations and rights of the lessee, we find, in article 2715, that:
“The lessee is bound to cause all necessary repairs to be made which it is incumbent on lessees to make, unless the contrary hath been stipulated”
—and, among .these, in the next following article, we find that:
“The repairs, which must be made at the expense of the tenant, are those which, during the lease, it becomes necessary to make: * * * To windows, shutters, * * * locks and hinges. * * * ”
It is true the article of the Code quoted above was not expressly referred to in the opinion in Brodtman v. Einerty, but it was observed that the repairing of a shutter or renewal of a hinge was a very ordinary re-pair, and was not one of the serious defects or vices against which the lessor had guaranteed the lessee, under the terms of article 2695 of the Civil Code. And it was said that, if the lessee’s wife was to be. considered a third person, not bound by the obligations *954 of tlie lessee, she would, under the doctrine of McConnell v. Lemley, 48 La. Ann. 1423, 20 South. 887, 34 L. R. A. 609, 56 Am. St. Rep. 319, “have to look to the lessee, and not to the lessor, for damages.” This latter expression, however, is not a correct doctrine, since the decision announcing it (McConnell v. Lemley and the companion case of Prechter v. Lemley, 48 La. Ann. 1439, 20 South. 1019) had already been, in effect, overruled by the decision in Schoppel v. Daly, 112 La. 212, 36 South. 322, and were again expressly overruled in Cristadoro v. Von Behren’s Heirs, 119 La. 1028, 44 South. 852, 17 L. R. A. (N. S.) 1161.
In Bianchi v. Del Valle, 117 La. 590, 42 South. 148, the demand for damages for personal injuries alleged to have been suffered by the wife of the lessee, by stepping into a hole in the floor of the leased premises, was rejected because the court found that the plaintiff had only suffered a slight temporary hurt, not serious enough to justify allowing her any damages. It is true the court cited the decision in Brodtman v. Finerty, 116 La. 1103, 41 South. 329, in support of the doctrine that the lessor was not liable for damages to the wife of the lessee, because of the latter’s neglect to make the necessary repairs; hut the decision to the contrary, in Schoppel v. Daly, 112 La. 201, 36 South. 322, was overlooked. It has since been expressly affirmed in Cristadoro v. Von Behren’s Heirs, supra, and in Wise v. Lavigne, 138 La. 218, 70 South. 103. It must also be observed that, after the court concluded that Mrs. Bianchi was not hurt seriously enough to justify allowing her any damages, the subsequent expressions regarding the right or duty of her husband, as the tenant of Del Valle, to make necessary repairs, were mere obiter dicta.
In the very recent case of Wise v. Lavigne, 138 La. 218, 70 South. 103, where the lessor was condemned to pay damages to the daughter of the lessee for .personal injuries caused by the falling of a balcony on the leased premises, affirming Schoppel v. Daly, 112 La. 201, 36 South. 322, it was observed that the plaintiff’s mother, the lessee, had been warned not to go upon the balcony because of its rotten condition. Hence the lessee knew that the repairs were needed. Nevertheless, in response to the plea of contributory negligence, urged under circumstances very similar to those under which the plea is urged by the defendant in this case, we said that we could not agree with the defendant’s counsel that the plaintiff was guilty of negligence in failing to observe that the balcony was so rotten that it could not withstand her weight; and we took occasion to say that there was no obligation on her part to have the balcony inspected or its strength tested before venturing upon it.
[5] Counsel for defendant contends that the doctrine of the case of Wise v. Lavigne is not applicable to this case because the plaintiff here acknowledged in her petition that she and her mother knew that the repairs were necessary, and because the cost of making them would have been very slight. Defendant’s counsel refers to the allegation in the fourth paragraph of the petition that the attention of the rent collector representing the defendant had been repeatedly directed to the rotten and dilapidated condition of the balcony, and that he had been repeatedly requested to have it repaired. Although the rent collector, as a witness, denied that he had been notified of the condition of the balcony, defendant’s counsel argues that the plaintiff’s allegation in her petition, repeated in her testimony, that she and her mother did notify the defendant’s rent collector of the condition of the balcony, was an acknowledgment that they were aware of its dangerous condition. This allegation, however, must be taken in connection with the allegation in the next following paragraph of the petition; that *956 is, that, although the lessee knew that the gallery was rotten and needed repairs, she did not know the extent of the rottenness and dilapidation, and did not know it was dangerous. We cannot suppress one and consider another allegation relating to the same subject-matter, without violating article 2291 of the Civil Code, which provides that, although a judicial declaration is proof against him who has made it, it cannot he divided against him. To assume that the lessee, in this case, knew that the balcony was so rotten that it could not withstand her weight would be to assume that she committed suicide. All that could be assumed in that respect would be that she knew or ought to' have known that the balcony was unsafe. The evidence, however, does not justify our concluding that the danger was so apparent as to do away with the provisions of article 2695 of the Civil Code, whereby the lessor was bound to guarantee the lessee against all vices and defects in the leased premises and to indemnify her for any loss resulting therefrom.
Defendant’s counsel contends that the doctrine of the case of Brodtman v. Finerty, referred to above, is particularly applicable to this case by reason of the insignificant cost of the repairs that were made after the accident. We have already shown that the correctness of the decisión cited rests, not upon the smallness of the cost of the repairs which should have been made in that ease, but upon the fact that they were such as the lessee was required to make, under the precise terms of the Civil Code. Prom the fact that it cost less than $3 to make the repairs which were made after the accident in this case, it does not follow as a legal consequence that it was the lessee’s duty to make the repairs. In the first place, the repairs that were made for less than $3 did not consist in putting the balcony in the condition in which it was originally. It consisted in nailing a piece of 1x6 inch facing along the front of the balcony, under the ends of the planks which formed the floor, and nailing three strips, 1x3 inches in size, from post to post, in place of the balustrade that had fallen down. The parts of the balustrade filed in evidence show that it was made of dressed material and was of very neat construction. The lessee could not assume that the lessor would consent to her knocking down the balustrade and replacing it with three 1x3 inch strips nailed from post to post, even if that would have made the balcony safe. In the second place, she had no technical knowledge of the strength or weakness of the structure; and, if she had known that it was dangerous, she was not required to know how little it would cost to repair it, or make it safe. She was only paying $8 a month rent. The collector testified that she was usually a week or more, and sometimes as much as a month, in arrears; but it might never have been apparent to her that the rent she owed was enough to pay for making the necessary repairs to the balcony. In a Louisiana case recently decided by one of the United States District Courts (Frank v. Suthon [C. C. ] 159 Fed. 174), it was said to be well settled that a lessee is not obliged to make repairs, the need of which is not apparent, and that he is not at fault for failing to discover and remedy concealed defects.
It is not necessary to decide the disputed question whether the lessee notified the lessor of the need of the repairs or demanded that they be made. It was held in Barnes v. Bierne, 38 La. Ann. 280, and in Tucker v. I. C. Railroad Co., 42 La. Ann. 114, 7 South. 124, that ignorance of the condition of the building on the part of the lessor, or the circumstance that the dangerous condition could not be detected easily, did not exonerate the lessor from liability for damages resulting *958 from the fall of a part of the building, and that it was not necessary to notify the owner of the building of its dangerous condition, to render him liable for whatever damages might result from his neglect to repair it. In the latter case, it was said that, where a standard of duty is fixed and its measure defined by law, its omission is negligence per se. We adhere to that doctrine.
The right accorded the lessee by article 2694 of the Civil Code, to have made, after having demanded that the lessor make, such repairs to the leased premises as are indispensable does not impose a secondary obligation on the lessee to make the repairs that it is the primary duty of the lessor to make. It is on another principle that the lessee cannot willfully and intentionally suffer a loss or injury to occur as a result of the need of repairs that he himself might make with the rent due the lessor, and put upon the lessor a loss of more than the repairs would have cost. On the same principle, the lessee cannot substitute, for his right to make such necessary repairs as the rent in his hands will pay for, the right to withhold all of the rent or to revoke the contract of lease. But the lessee is not at fault for failing to make any repairs, except those which, by article 2716 of the Civil Code, he is required to make. His right to make the necessary repairs which it was primarily the duty of the lessor to make does not affect the guaranty, imposed by article 2695 of the Civil Code upon the lessor, to protect the lessee from any vice or defect in the leased premises and to indemnify him for any loss that may result therefrom. Nor does the right accorded the lessee by article 2694 of the Civil Code diminish the obligation, imposed by articles 670 and 2322 of the Civil Code upon all owners of buildings, to keep them in repair, under the penalty of having to answer for any damage that may result from their going to ruin or from the fall of any part of the material composing them, as a. result of the neglect to repair them.
The judgment appealed from is affirmed.
MONROE, C, J., takes no part. PROVO STY, J., concurs in the decree only.